**BELLEFONTE REINSURANCE CO., Mission Insurance Co., The Insurance Co. of the State of Pennsylvania, North American Co. for Property and Casualty Insurance, Constitution Reinsurance Corp. and Gerling Global Reinsurance Co., Appellees,**

v.

**The AETNA CASUALTY AND SURETY CO., Appellant.**

No. 1164, Docket 90–7009.

United States Court of Appeals, Second Circuit.

Argued April 18, 1990.

Decided May 18, 1990.

Deborah F. Cohen, Philadelphia, Pa. (Henry M. Justi, and Pepper, Hamilton & Scheetz, Philadelphia, Pa.; Howard S. Veisz, Mark Platt, and Kornstein, Veisz & Wexler, New York City, on the brief) for appellant Aetna Cas. and Sur. Co.

Frank M. Nicoletti, New York City (George J. Koelzer, Clarkson S. Fisher, Jr., and Ober, Kaler, Grimes & Shriver, New York City, on the brief) for appellees.

Before TIMBERS, PRATT and MINER, Circuit Judges.

TIMBERS, Circuit Judge:

Appellant Aetna Casualty and Surety Co. ("Aetna") appeals from a summary judgment entered November 28, 1989, in the Southern District of New York, John F. Keenan, *District Judge*, in favor of appellees, six reinsurance companies ("the reinsurers"). The district court held that the reinsurers were not obligated to pay Aetna any additional sums for defense costs over and above the limits on liability stated in the reinsurance certificates.

The sole issue on appeal is whether the reinsurers are obligated to pay additional

sums for defense costs over and above the limits stated in the reinsurance certificates.

For the reasons which follow, we affirm the judgment of the district court.

## I.

We summarize only those facts and prior proceedings believed necessary to an understanding of the issue raised on appeal.

This appeal arises out of the explosion of litigation over the Dalkon Shield intrauterine device. Aetna was the primary insurer of A.H. Robins Co., manufacturer of the Dalkon Shield. Appellees are six reinsurance companies that agreed to reinsure a portion of Aetna's risk.

From 1968 through 1977, Aetna issued primary and excess insurance policies which insured Robins against liability for personal injuries arising from use of Robins' products. From 1971 through 1976, the reinsurers issued certificates of facultative reinsurance which would reinsure specified portions of the excess insurance policies issued by Aetna for Robins.

After a number of products liability actions were brought against Robins, Aetna and Robins had a dispute over the extent of Aetna's liability as insurer for expenses incurred in defending the actions. Robins commenced a declaratory judgment action against Aetna in the Chancery Court in Richmond, Virginia. It sought a decision that defense costs were to be paid by Aetna, regardless of whether those defense costs exceeded the limitations of liability stated in the excess insurance policies. In 1984, the parties settled their dispute. Aetna agreed to pay an amount substantially in excess of the cap stated in the policies ($72 million more, according to appellees). The reinsurers did not participate in these settlement negotiations. They did not sign the agreement.

After signing the settlement agreement, Aetna turned to the reinsurers for a portion of the excess. Aetna had signed separate reinsurance agreements with each of the six reinsurers, but all of the certificates contain relevant provisions which are substantially the same. The following excerpts are from the certificate of appellee Constitution Reinsurance Corp.:

"[Provision 1]

[Reinsurer] ... [d]oes hereby reinsure Aetna ... (herein called the Company) in respect of the Company's contract hereinafter described, in consideration of the payment of the premium and subject to the terms, conditions and amount of liability set forth herein, as follows....

[Provision 2]

Reinsurance Accepted

$500,000 part of $5,000,000 excess of $10,000,000 excess of underlying limits ...

[Provision 3]

The Company warrants to retain for its own account ... the amount of liability specified ... above, and the liability of the Reinsurer specified ... above [i.e., amount of reinsurance accepted] shall follow that of the Company....

[Provision 4]

All claims involving this reinsurance, when settled by the Company, shall be binding on the Reinsurer, which shall be bound to pay its proportion of such settlements, and in addition thereto, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment, its proportion of expenses ... incurred by the Company in the investigation and settlement of claims or suits...."

The reinsurers conceded that they were liable up to the amount of the limitation of liability provisions (Provisions 1 and 2) of each of the reinsurance certificates, but refused to pay any share of the excess amount. Aetna sought a sum totalling more than $5 million—from all of the reinsurers combined—in excess of the liability caps.

The reinsurers commenced the instant action in 1985, seeking a declaratory judgment limiting their liability to the amount stated in the reinsurance certificates. Aetna answered and counterclaimed for a declaratory judgment that the reinsurance certificates obligated the reinsurers to "follow the fortunes" of Aetna and indemnify

Aetna for the excess defense costs owed to Robins. The reinsurers and Aetna both moved for summary judgment.

In an opinion dated September 5, 1989, the district court held that the dollar amount typed in the column entitled "Reinsurance Accepted" was an overall limitation, and that the reinsurance certificates were cost-inclusive and capped by that amount. In an opinion dated November 21, 1989, the court denied Aetna's motion for reconsideration. The order granting the reinsurers' motion for summary judgment was entered November 28. This appeal followed.

## II.

█ Since this is an appeal from a summary judgment, we review the record in the light most favorable to appellant. *Kronfeld v. Trans World Airlines Inc.,* 832 F.2d 726, 731 (2 Cir.1987), *cert. denied,* 485 U.S. 1007 (1988). The material facts are undisputed. The dispute is over the interpretation of the text of the reinsurance certificates. The proper standard for appellate review of a pure textual construction by the district court, whatever the procedural posture of the case, is de novo. *Meyers v. Selznick Co.,* 373 F.2d 218, 222 n. 2 (2 Cir.1966) (Friendly, J.); *Eddy v. Prudence Bonds Corp.,* 165 F.2d 157, 163 (2 Cir.1947) (L. Hand, J.), *cert. denied,* 333 U.S. 845 (1948).

## III.

The sole issue presented on this appeal is whether the reinsurers are obligated to Aetna for an amount greater than the amounts stated in the reinsurance certificates. We are mindful in interpreting the agreements that, as with all contracts, they should be construed, if possible, so as to give effect to all of their material provisions. *Spencer, White & Prentis, Inc. v. Pfizer Inc.,* 498 F.2d 358, 363 n. 23 (2 Cir.1974).

### (A)

█ We turn first to Aetna's contention that the "follow the fortunes" doctrine of reinsurance law obligates a reinsurer to indemnify a reinsured for all of the reinsured's defense expenses and costs, even when those expenses and costs bring the total amount to more than the explicit limitation on liability contained in Provisions 1 and 2 of each reinsurance certificate. Aetna claims that the "follow the fortunes" doctrine applies whenever the reinsured makes a reasonable settlement with the underlying insured. We reject this claim. We hold that the doctrine of "follow the fortunes" does not render the reinsurers liable in this case.

█ Aetna asserts that the third provision of each of the certificates contains a general "follow the fortunes" clause, typical of most reinsurance contracts. The doctrine of "follow the fortunes" has been defined as meaning that "the reinsurer will follow the fortunes or be placed in the position of the [insurer]." Koehnen, "Administration and Maintenance of Business in Force," Reinsurance 509 (Strain ed. 1980); *see also* Kramer, "The Nature of Reinsurance," Reinsurance, *supra,* at 11–12 (reinsurer shall "follow the fortunes" of the insured as if the reinsurer were a party to the original insurance). Basically, the doctrine burdens the reinsurer with those risks which the direct insurer bears under the direct insurer's policy covering the original insured. *American Ins. Co. v. North American Co. for Property and Casualty Ins.,* 697 F.2d 79, 81 (2 Cir.1982) (*"AIC"*); *see also* Gerathewohl, 1 Reinsurance Principles and Practice 466 (1980).

The reinsurers do not dispute that they must follow Aetna's fortunes with respect to the Robins settlement up to the liability cap. Aetna, however, contends that the reinsurers are liable beyond the stated limits where, as here, the excess was for "reasonable" defense costs expended on settlement in "good faith" of a dispute arising from the underlying policy.

According to Aetna, that result is required by our decision in *AIC*. There, the reinsurer agreed to assume part of the risk of damage awards assessed against the underlying insured. In one action, a jury

awarded punitive damages against the insured. The underlying policy was ambiguous as to whether punitive damages were included. Rather than appeal, however, the insurer decided to settle in an amount that included part of the punitive damage award. The insurer then demanded from the reinsurer an amount that included a proportional amount of the punitive damage award. We held that, despite the ambiguity, punitive damages were not covered by the underlying policy. We declined to apply the "follow the fortunes" doctrine to hold the reinsurer liable. *AIC, supra,* at 81.

Although the result in *AIC* was in favor of the reinsurer, Aetna seizes on the following language in that opinion to support its contention here:

"In some cases in which there is a genuine ambiguity over what a settlement covers, a 'follow the fortunes' clause may oblige a reinsurer to contribute to a settlement even though it might encompass excluded claims."

*Id.*

Assuming arguendo that there was such ambiguity in the Aetna–Robins policies, the quoted dictum in *AIC* does not render appellees liable. In that case, there was no question of a cap on liability in the reinsurance agreement, only with respect to the scope of coverage in the underlying policy. The amount in question was less than the cap. There is nothing in *AIC* (nor in any other case cited by Aetna), which leads to the conclusion that a "follow the fortunes" clause can render a reinsurer liable for an amount in excess of the bargained-for coverage. *Id.*

To read the reinsurance certificates in this case as Aetna suggests—allowing the "follow the fortunes" clause to override the limitation on liability—would strip the limitation clause and other conditions of all meaning; the reinsurer would be obliged merely to reimburse the insurer for any and all funds paid. Such a reading would be contrary to the parties' express agreement and to the settled law of contract interpretation.

The "follow the fortunes" clauses in the certificates are structured so that they co-

exist with, rather than supplant, the liability cap. To construe the certificates otherwise would effectively eliminate the limitation on the reinsurers' liability to the stated amounts. *Calvert Fire Ins. Co. v. Yosemite Ins. Co.,* 573 F.Supp. 27, 29 (E.D.N.C. 1983) (reinsurers' liability followed the fortunes of insurer only within limits specified in reinsurance certificate).

We agree with the district court that "the limitation is to be a cap on all payments by the reinsurer." We hold that the district court correctly read the first two provisions of the reinsurance certificates to cap the reinsurers' liability, and that the "follow the fortunes" doctrine does not allow Aetna to recover defense costs beyond the express cap stated in the certificates.

**(B)**

■ We turn next to Aetna's contention that the phrase "in addition thereto," set forth in the fourth provision of each of the reinsurance certificates, indicates that liability for defense costs is separate from liability for the underlying losses sustained by Robins (i.e., Robins' direct liability to the Dalkon Shield claimants). According to Aetna, that phrase indicates that the monetary limitation on liability set forth in the first two provisions of the certificates caps only the reinsurers' liability for the underlying losses, not the reinsurers' liability for defense expenses and costs. We disagree.

We read the phrase "in addition thereto" merely to differentiate the obligations for losses and for expenses. The phrase in no way exempts defense costs from the overall monetary limitation in the certificate. This monetary limitation is a cap on all payments under the certificate. In our view, the "in addition thereto" provision merely outlines the different components of potential liability under the certificate. It does not indicate that either component is not within the overall limitation.

Aetna contends that the reinsurer's duty to indemnify the insurer is different and separate from the reinsurer's duty to defend. In support of this contention, it points to the statement in *Federal Ins. Co. v. Cablevision Systems Devel. Co.,* 662 F.Supp. 1537, 1539 (E.D.N.Y.), *aff'd,* 836

F.2d 54 (2 Cir.1987), that an insurer's duty to defend is, in theory, "essentially limitless." That statement has no application to the instant case. Here, the limitation on liability provision capped the reinsurers' liability under the certificates. All other contractual language must be construed in light of that cap.

Likewise, Aetna's reliance on *Peerless Ins. Co. v. Inland Mutual Ins. Co.*, 251 F.2d 696 (4 Cir.1958), is misplaced. In *Peerless* the reinsurer was held liable for an amount, agreed to in a settlement, in excess of the stated limit. The court in that case, however, found that the reinsurer played such a substantial role in the settlement of the underlying claim that it acted as a co-insurer. *Id.* at 703–04. In the instant case, by contrast, the reinsurers took no part in negotiations and never agreed to the settlement between Aetna and Robins.

We are aware of the unreported opinion to the contrary in *Penn Re, Inc. and Calvert Ins. Co. v. Aetna Casualty and Surety Co.*, No. 85–385–Civ.–5 (E.D.N.C. June 24, 1987). There, the court read virtually identical reinsurance certificates to bind two reinsurers for an amount which exceeded the face amount of the reinsurance certificates. We decline to follow the reasoning of that opinion. There, the court did not consider the "subject to" clause of the first provision, which makes the "in addition thereto" language "subject to" the cap on liability in the second provision.

There is no difference whether Aetna's demand is considered one for additional expenses, for additional settlement contributions, or that the reinsurers follow the liability of Aetna. Whatever the demand, the reinsurers' entire obligation is quantitatively limited by the dollar amount the reinsurers agreed to reinsure. Once the reinsurers have paid up to the certificate limits, they have no additional liability to Aetna for defense expenses or settlement contributions. Any other construction of the reinsurance certificates would negate the phrase "the reinsurer does hereby reinsure Aetna ... *subject to the ... amount of liability set forth herein.*" (emphasis added). The reinsurers are liable only to the extent of the risk they agreed to reinsure.

They cannot be liable for the insurer's action in excess of the agreement.

We hold that the "in addition thereto" language of the fourth provision of the reinsurance certificates does not exempt defense costs from the overall limitation on liability set forth in the first two provisions of each certificate. Rather, we hold that these costs are "subject to" the express cap on liability in each certificate.

### IV.

To summarize:

We reject Aetna's contentions that the "follow the fortunes" doctrine, or the "in addition thereto" language in each reinsurance certificate, exempts defense costs from the clauses limiting the reinsurers' overall liability under the certificates. We hold that these costs are "subject to" the express cap on liability set forth in each certificate.

Affirmed.