# Illinois Official Reports

## Appellate Court

---

*Allstate Property & Casualty Insurance Co. v. Trujillo*,
2014 IL App (1st) 123419

---

| | |
|---|---|
| Appellate Court Caption | ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, Plaintiff-Appellee, v. DOLORES TRUJILLO, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-12-3419 |
| Rule 23 Order filed<br>Rule 23 Order<br>withdrawn<br>Opinion Filed | December 20, 2013<br><br>February 21, 2014<br>February 28, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from an automobile collision involving multiple tortfeasors, the appellate court reversed the trial court's judgment ruling that plaintiff insurer was entitled to set off defendant's claim for underinsured motorist benefits under one of the policies plaintiff issued with the amounts plaintiff paid under the bodily injury coverage of the same policy, since under the circumstances, defendant was allowed to seek both bodily injury and underinsured benefits under the same policy, but defendant was not entitled to a windfall or double recovery, and therefore, the cause was remanded to ensure defendant was not awarded more than the damages suffered. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CH-02130; the Hon. Mary Anne Mason, Judge, presiding. |

| | |
|---|---|
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Ronald Fishman and Kenneth A. Fishman, both of Fishman & Fishman, Ltd., of Chicago, for appellant. |
| | Peter C. Morse and Cynthia Ramirez, both of Morse Bolduc & Dinos, LLC, of Chicago, for appellee. |
| Panel | JUSTICE REYES delivered the judgment of the court, with opinion. Presiding Justice Rochford and Justice Lampkin concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant Dolores Trujillo (Trujillo) appeals an order of the circuit court of Cook County granting judgment on the pleadings to plaintiff Allstate Property and Casualty Insurance Company (Allstate) in a declaratory judgment action. On appeal, Trujillo contends the circuit court erred in ruling Allstate was entitled to set off her claim for underinsured motorist (UDIM) benefits with amounts Allstate paid under the bodily injury coverage of the same insurance policy, relating to an automobile collision involving multiple tortfeasors. For the following reasons, we reverse the judgment of the circuit court and remand the case for further proceedings.

¶ 2                                      BACKGROUND
¶ 3    On January 20, 2012, Allstate filed a complaint for declaratory judgment in the circuit court containing the following allegations. Allstate is an insurance company duly licensed to sell automobile insurance in Illinois. Allstate issued a policy (Allstate policy) to Adan Delgado (Delgado), which was in full effect on August 20, 2009. A true and accurate copy of the policy was attached to the complaint as an exhibit.

¶ 4    The Allstate policy provided automobile liability insurance including bodily injury coverage with a limit of $100,000 per person and $300,000 per occurrence. In general, pursuant to this coverage, Allstate promised to pay damages when an insured person is legally obligated to pay because of bodily injury sustained by "any person." The policy states it protects an insured person from liability for damages arising from the ownership, maintenance, use, loading or unloading of an insured automobile.

¶ 5 The Allstate policy also included uninsured motorist (UM) insurance, the bodily injury coverage of which included UDIM protection with a limit of $100,000 per person and $300,000 per accident. An Illinois amendatory endorsement to the Allstate policy stated in part as follows:

"If the accident involves the use of an underinsured **motor vehicle**, the limits for this coverage will be reduced by:

1. all amounts paid by or on behalf of the owner or operator of the underinsured auto or anyone else responsible. This includes all sums paid under the **bodily injury** or **property damage** liability coverage of this or any other auto insurance policy."

The endorsement also defined "insured persons" as including the named insured, any resident relative and "[a]ny other person while in, on, getting into or out of an insured auto with **your** permission."

¶ 6 On or about August 10, 2009, Trujillo was a passenger in an Allstate-insured vehicle driven by Delgado when the vehicle was involved in an accident with a vehicle insured by American Access Insurance Company (American Access). Trujillo settled her claim against the American Access insured in exchange for the $20,000 limit of the American Access policy. Trujillo settled her claim against Delgado in exchange for the $100,000 liability coverage limit of the Allstate policy.

¶ 7 Trujillo also made a claim against Allstate for UDIM benefits in the amount of $80,000, representing the difference between the Allstate policy's $100,000 UDIM coverage limit and the $20,000 received from her settlement with the American Access insured. Allstate informed Trujillo no UDIM benefits were available under the Allstate policy. Allstate explained the limits of the UDIM coverage were reduced to zero by its $100,000 payment to Trujillo on Delgado's behalf under the bodily injury coverage of the Allstate policy's automobile liability insurance.

¶ 8 Accordingly, Allstate filed its declaratory judgment action pursuant to section 2-701 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-701 (West 2010)), requesting a declaration Allstate owed Trujillo no UDIM benefits for the August 10, 2009, accident. On March 6, 2012, Trujillo filed a motion to dismiss Allstate's complaint for failure to adequately state a claim, pursuant to section 2-615(b) of the Code (735 ILCS 5/2-615(b) (West 2010)). Following briefing on the motion to dismiss, the circuit court denied the motion to dismiss on July 19, 2012. Trujillo raises no issue in this appeal regarding the denial of her motion to dismiss.

¶ 9 Meanwhile, on May 17, 2012, Trujillo filed a motion for judgment on the pleadings pursuant to section 2-615(e) of the Code (735 ILCS 5/2-615(e) (West 2010)), arguing Allstate's attempt to reduce its UDIM exposure in this case violated public policy.

¶ 10 On August 20, 2012, Trujillo answered Allstate's complaint and asserted affirmative defenses. Trujillo denied the Allstate policy attached to the complaint was in full force and effect on August 10, 2009. According to Trujillo, she was a passenger in the Allstate-insured vehicle, which was owned by Adan Delgado, but driven by Juana Delgado. Trujillo also identified the American Access insured as Marta Zawadska. Trujillo asserted the setoff

language in the endorsement of the Allstate policy, if in effect at the time of the accident, was illegal and void.

¶ 11      On August 23, 2012, Allstate filed a motion for judgment on the pleadings pursuant to section 2-615(e) of the Code (735 ILCS 5/2-615(e) (West 2010)). Allstate argued its endorsement expressly reduced its UDIM exposure by any payment made under other provisions of its policy. Allstate also argued the reduction of its UDIM limit was supported by Illinois law, although it asserted no Illinois court had directly addressed the issue.

¶ 12      On September 11, 2012, Trujillo filed a response to Allstate's motion for judgment on the pleadings. In her response, Trujillo initially argued the case could be decided as a matter of law, as both parties had moved for judgment on the pleadings. Trujillo also reiterated her argument that Allstate's attempt to reduce its UDIM limits in this case violated public policy as established by Illinois case law. On September 14, 2012, Allstate filed its response to Trujillo's motion for judgment on the pleadings, substantially reiterating its arguments in support of its own motion for judgment on the pleadings.

¶ 13      On October 31, 2012, the circuit court entered an order granting judgment on the pleadings in favor of Allstate and denying Trujillo's "cross-motion" for judgment on the pleadings, declaring no UDIM benefits are available to Trujillo under the Allstate policy for the August 10, 2009, accident. The order also includes a ruling that the policy provisions upon which Allstate relied are not contrary to public policy. On November 13, 2012, Trujillo filed a timely notice of appeal to this court. On November 15, 2012, Trujillo filed an amended notice of appeal, correcting the name of the appellant.

¶ 14                            DISCUSSION

¶ 15      The sole issue on appeal is whether the circuit court erred in granting judgment on the pleadings in favor of Allstate. "Any party may seasonably move for judgment on the pleadings" pursuant to section 2-615(e) of the Code. 735 ILCS 5/2-615(e) (West 2010). Judgment on the pleadings is proper when the pleadings disclose no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 385 (2005). It is similar to a motion for summary judgment, but is limited to the pleadings. *Intersport, Inc. v. National Collegiate Athletic Ass'n*, 381 Ill. App. 3d 312, 318 (2008). Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010). Moreover, "[w]hen parties file cross-motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the record." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28.

¶ 16      A party moving for a section 2-615(e) judgment on the pleadings concedes the truth of the well-pleaded facts in the nonmovant's pleadings. *McCall v. Devine*, 334 Ill. App. 3d 192, 198 (2002). The court must take as true all reasonable inferences from those facts but construe the evidence strictly against the movant and disregard any conclusory allegations and surplusage. *Id.*; see *Gillen*, 215 Ill. 2d at 385. We review a court's order granting or

denying a motion for judgment on the pleadings *de novo*. *McCall*, 334 Ill. App. 3d at 198. Accordingly, this court is not required to defer to the circuit court's reasoning. See, *e.g.*, *Tilschner v. Spangler*, 409 Ill. App. 3d 988, 990 (2011).

¶ 17    We initially note Trujillo's brief includes a paragraph discussing, without legal argument or citation to authority, the fact that Allstate's complaint does not allege the Allstate policy and its endorsements were mailed to Delgado. The record on appeal discloses Trujillo made similar assertions in her answer, but raised no argument based on these assertions in her motion for judgment on the pleadings or in her response to Allstate's motion for judgment on the pleadings. It is axiomatic that " 'an issue not presented to or considered by the circuit court cannot be raised for the first time on review.' " *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996) (quoting *Daniels v. Anderson*, 162 Ill. 2d 47, 58 (1994)). "Generally, arguments not raised before the circuit court are forfeited and cannot be raised for the first time on appeal." *Mabry v. Boler*, 2012 IL App (1st) 111464, ¶ 15. Allowing a party to change its theory of the case on appeal would weaken the adversarial process and likely prejudice the opposing party. *Haudrich*, 169 Ill. 2d at 536. Moreover, where an appellant does not present an argument in its opening brief, the appellant forfeits the issue. *Vancura v. Katris*, 238 Ill. 2d 352, 369 (2010); Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013). Accordingly, Trujillo has forfeited any claim regarding Allstate's failure to allege the policy and endorsements were mailed to Delgado in this case.[1] We now turn to consider whether the circuit court erred in determining Trujillo was not entitled to benefits under the UDIM coverage of the Allstate policy because of the setoffs for payment under the bodily injury liability coverage.

¶ 18    Generally, when the language of an insurance policy is clear and unambiguous, a reviewing court will give effect to those terms. *Grevas v. United States Fidelity & Guaranty Co.*, 152 Ill. 2d 407, 410 (1992); *Menke v. Country Mutual Insurance Co.*, 78 Ill. 2d 420, 423-24 (1980). "Parties to a contract may agree to any terms they choose unless their agreement is contrary to public policy." *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 559 (1992). In this case, the endorsement to the UDIM coverage in the Allstate policy provided, in pertinent part, the limits of UDIM coverage will be reduced by "sums paid under the bodily injury *** liability coverage of this *** auto insurance policy." On appeal, Trujillo does not contend this language is ambiguous. Rather, Trujillo contends this reduction of UDIM coverage violates public policy, given the circumstances presented in this appeal.

¶ 19    UDIM coverage is a statutory creation. Section 143a-2(4) of the Insurance Code requires automobile insurers to include UDIM coverage in the policies they issue. 215 ILCS

---

[1]Moreover, the record on appeal suggests no reason to relax the rule of forfeiture in this case. Trujillo's answer admitted Allstate attached a copy of the policy in effect from September 28, 2004, through March 28, 2005. The policy expressly refers to including amendatory endorsement form AU10635-3, which is the amendatory endorsement at issue in this case. The complaint also contains an affidavit from an Allstate employee certifying this was the coverage in effect on August 10, 2009. In one of her affirmative defenses, Trujillo pleaded Delgado was required to be notified by mail of a material reduction in coverage pursuant to section 143.17(a) of the Illinois Insurance Code (Insurance Code) (215 ILCS 5/143.17(a) (West 2008)). As the record establishes the amendatory endorsement was previously part of Delgado's policy, there was no genuine issue of material fact regarding notification of a material reduction in coverage in the policy as renewed.

5/143a-2(4) (West 2008). Section 143a-2(4) of the Insurance Code defines an "underinsured motor vehicle" as one "whose ownership, maintenance or use has resulted in bodily injury or death of the insured," and "for which the sum of the limits of liability under all bodily injury liability insurance policies or under bonds or other security" be maintained by the person responsible for the vehicle is less than the limits of underinsured coverage provided the insured under his policy at the time of the accident. *Id*. The statute further provides for the insurer's limits of liability as follows:

> "The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured motor vehicle." *Id*.

The purpose of UDIM coverage is to put the insured in the same position as if injured by a motorist with insurance in the same amount as the UDIM policy. *E.g.*, *Hall v. Burger*, 277 Ill. App. 3d 757, 765 (1996) (and cases cited therein). Recovery under UDIM coverage will be to the extent of claimant's damages at the most, thus eliminating the danger of "double recovery" by a claimant. *Id*. at 767.

¶ 20    In this case, under the statutory definition, the automobile insured by American Access was underinsured because the $20,000 liability limit of the American Access policy was less than the limits of liability of the UDIM coverage provided by Allstate. See 215 ILCS 5/143a-2(4) (West 2008). Trujillo does not dispute any recovery of UDIM benefits should be reduced by the $20,000 recovered from the underinsured driver. The dispute in this case concerns whether Allstate's further reduction of UDIM benefits to zero due to its payment of bodily injury benefits based on its driver's liability for the accident is contrary to public policy.

¶ 21    Trujillo relies on *Hoglund v. State Farm Mutual Automobile Insurance Co.*, 148 Ill. 2d 272 (1992), in support of her argument that allowing a setoff when there is no danger of double recovery violates public policy. *Hoglund* was consolidated with *Greenawalt v. State Farm Insurance Co.*, 210 Ill. App. 3d 543 (1991), which involved similar facts. Both cases involved a plaintiff with UM coverage who was injured by two tortfeasors, one of whom was fully insured and one of whom was totally uninsured (as opposed to underinsured). *Hoglund*, 148 Ill. 2d at 274. In each case, both drivers were at fault, and each plaintiff suffered injuries exceeding the combined coverage limits of the insured driver and her uninsured motorist coverage. *Id*. at 274-75. Each plaintiff settled with the insured driver and received the insured driver's liability coverage limit of $100,000. *Id*. at 275. Each plaintiff then sought to obtain the limit of the uninsured motorist coverage under their own automobile insurance policies of $100,000. *Id*. at 274-75. Each plaintiff's policy also contained a setoff provision stating any amounts paid or payable to the insured shall be reduced " 'by or for any person or organization who is or may be held legally liable for the bodily injury to the insured.' " (Emphasis omitted.) *Id*. at 275. The defendant insurance companies claimed a setoff for UM coverage of $100,000 by the $100,000 paid by the insured motorists, left nothing available. *Id*.

¶ 22    Our supreme court first considered the public policy behind the uninsured motorist provision of the Insurance Code was to place the insured in "substantially the same position

as if the wrongful uninsured driver had been minimally insured." *Id*. at 277. The court determined the literal interpretation of each policy's setoff provision warranted the complete setoff. *Id*. at 278. The *Hoglund* court, however, also determined each setoff provision could not be read in isolation, but must be considered in conjunction with the plaintiffs' reasonable expectation of receiving UM coverage because they paid a premium for it. In addition, a court must consider the public policy behind the uninsured motorist statute, and the coverage intended by the insurance policy, as well as the facts of each case. *Id*. at 279. When viewed in this way, our supreme court found a latent ambiguity in the policy language is disclosed, which occurs when the policy language is clear and intelligible and suggests a single meaning, but " 'some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings.' " *Id*. (quoting Black's Law Dictionary 102 (3d ed. 1933)).

¶ 23    In so viewing the setoff provisions at issue, the *Hoglund* court concluded the policyholders paid a premium for $100,000 of uninsured motorist coverage and reasonably expected coverage for damages caused by an uninsured motorist up to that amount. *Id*. With reference to the facts of the occurrences, it was significant that each of the claimants was injured in part by an uninsured motorist and in part by an insured motorist, yet nothing was paid to either claimant on behalf of the uninsured motorists. *Id*. Each plaintiff reasonably expected to receive coverage for damages caused by an uninsured motorist, but the policies allowed the insurance company a setoff of monies paid by the insured motorist for that driver's fault in the accident, which was unrelated to the fault of the uninsured motorist. *Id*.

¶ 24    Our supreme court also ruled a literal interpretation of the insurance policies at issue frustrated the public policy behind the uninsured motorist statute because the plaintiffs would not be placed in the same position if the uninsured driver had liability coverage. *Id*. at 279-80. The court reasoned that if the uninsured driver had been insured, the plaintiff would receive compensation from both drivers' liability coverage. *Id*. at 280. However, the literal interpretation allowed the insurance company to set off the monies paid to each plaintiff by the insured driver against the plaintiffs' uninsured motorist coverage, which effectively nullified the uninsured motorist coverage. *Id*. As a result, the *Hoglund* court ruled the setoff provisions denied the plaintiffs the "very insurance protection" for which they paid premiums and thus created a latent ambiguity. *Id*. Accordingly, the court construed the policies in favor of coverage to the insured and concluded the insurance company in both cases was entitled to a setoff against the uninsured motorist coverage only to the extent necessary to prevent double recoveries. *Id*.

¶ 25    In *Gibbs v. Madison Mutual Insurance Co.*, 242 Ill. App. 3d 147 (1993), this court extended *Hoglund* to the situation where the second tortfeasor was merely underinsured. In that case:

> "Defendant issued Danny L. Gibbs a policy of motor vehicle liability insurance, policy No. 00479725, which was effective from June 20, 1988, to December 20, 1988. There were four automobiles covered under policy No. 00479725: a 1986 Lincoln Town Car, a 1982 Dodge 400, a 1987 Chevrolet Spectrum, and a 1976 GMC half-ton pickup. Each automobile under the policy carried coverage of $100,000 per person and $300,000 per accident for bodily injuries. The underinsured coverage

under the aforementioned policy also set limits at $100,000 per person and $300,000 per accident for each automobile. The premium was broken down as follows: a premium of $159.45 was required for coverage on the 1986 Lincoln, $267.20 was required for the 1982 Dodge 400, $171 was required for the 1987 Chevrolet Spectrum, and $96.40 was required for the 1976 GMC half-ton pickup. Policy No. 00479725 also contained anti-stacking provisions under 'Part A–liability coverage' and 'Part D–underinsured motorists coverage.'

On September 11, 1988, Danny Gibbs was driving the Lincoln Town Car on Illinois Route 145 in Massac County when a collision occurred between his automobile and an automobile driven by Patrick Burkhart. Passengers in the Gibbs automobile are the other plaintiffs in this suit. At the time of the collision, Patrick Burkhart was insured by State Farm Mutual Insurance Company with policy limits of $30,000 per person and $100,000 per accident for bodily injuries. State Farm has tendered its policy limit of $30,000 to Akiyo Gibbs. The parties stipulated that Akiyo Gibbs, Faye Greer, Alisa Gibbs, Tia Gibbs and Kristina Brooke Horton each sustained some personal injuries arising out of the collision between Danny Gibbs and Patrick Burkhart. Plaintiffs' amended complaint for declaratory judgment states that Akiyo Gibbs sustained injuries and damages in an amount in excess of $800,000." *Id*. at 149-50.

The plaintiffs filed a declaratory judgment action. Following a bench trial, the circuit court ruled the bodily injury and UDIM coverages on the four vehicles covered by the policy could not be stacked and the insurer was also entitled, based on the policy language, to a setoff of bodily injury benefits by any amounts paid under the policy's UDIM coverage. *Id*. at 150-51.

¶ 26        On appeal, this court determined the coverages could be stacked. *Id*. at 152. More significant to this appeal, regarding the setoff, this court applied the reasoning of our supreme court in *Hoglund* to UDIM coverage. See *id*. at 154-56. The *Gibbs* court then reasoned:

"For purposes of this discussion, we assume both drivers were at fault. Danny Gibbs had bodily injury limits of $100,000/$300,000 which we have determined may be stacked together. Danny Gibbs also had underinsured motorist coverage in an equal amount. Thus, under section 143a-2(3) of the [Insurance] Code, there is no way Danny Gibbs can be an underinsured driver. Plaintiffs seek to recover under the policy issued to Danny Gibbs for bodily injury coverage because of Danny Gibbs' degree of fault in the accident. Additionally, plaintiffs seek to recover under the policy issued to Danny Gibbs because of Patrick Burkhart's status as an underinsured driver. Plaintiffs are correct that recovery under 'Part A–Liability Coverage' is separate and distinct from 'Part D–Underinsured Motorist Coverage.' Relying on *Hoglund*, we conclude that defendant is entitled to a setoff under the underinsured motorists provisions only for the $30,000 paid by Patrick Burkhart's insurance company." *Id*. at 156-57.

Accordingly, this court reversed the summary judgment in favor of the insurer and remanded the case for further proceedings. *Id*. at 157.

¶ 27        This court reached a similar result in *King v. Allstate Insurance Co.*, 269 Ill. App. 3d 190 (1994), which, like *Gibbs*, also involved multiple tortfeasors. King was injured when he was

involved in a two-car accident while riding his bicycle and incurred over $48,000 in medical bills. *Id*. One of the drivers who was at fault in the accident had automobile insurance with a limit for bodily injury liability of $100,000 per person/$300,000 per occurrence, while the other driver at fault had automobile insurance with a limit for bodily injury liability of $20,000 per person/$40,000 per occurrence. *Id*. King received the limits of both drivers' policies, which totaled $120,000. *Id*. King made a claim for the limit of his own Allstate UDIM coverage, which Allstate denied, where the policy language provided damages payable would be reduced by " 'all amounts paid by or on behalf of the owner or operator of the uninsured auto or anyone else responsible,' " including " 'all sums paid under the bodily injury liability coverage of this or any other auto policy,' " as well as "all amounts paid by or on behalf of the owner or operator of the underinsured motor vehicle." (Emphasis omitted.) *Id*. at 191. King filed a declaratory judgment action; on cross-motions for summary judgment, the circuit court granted judgment in favor of Allstate. *Id*. at 191-92.

¶ 28    On appeal, the *King* court noted that prior cases involving underinsured motorist coverage also involved only one at-fault driver. *Id*. at 194. This court also observed our supreme court's decision in *Sulser* was not directly applicable because it involved the setoff of workers' compensation benefits, but the decision nevertheless established "the public policy considerations behind both uninsured motorist coverage and underinsured motorist coverage are similar rather than distinct." *Id*. Accordingly, following *Gibbs*, the court concluded the insurance policy setoff language before it would violate public policy where multiple tortfeasors were involved. *Id*.

¶ 29    The *King* court, however, observed that under *Hoglund*, Allstate could only set off the amounts received from other policies to the extent necessary to prevent double recovery. *Id*. at 195. King had a $50,000 limit per person for underinsured motorist coverage and received $20,000 from the underinsured motorist and thus the maximum King could recover from Allstate under his UDIM coverage was $30,000. *Id*. Whether King could recover the full $30,000 from Allstate depended on the total extent of his damages, but the extent of King's damages over $120,000 was unknown, requiring this court to remand the case for a determination of King's damages, in order to avoid a double recovery. *Id*.

¶ 30    Although neither party brought *Gibbs* or *King* to the attention of the circuit court (despite Allstate having been a defendant in *King*), or discussed the cases in their appellate briefs, these decisions remain the law and are controlling in this appeal. In this case, as in *Gibbs* and *King*, there are multiple tortfeasors. The Allstate policy included bodily injury liability coverage with a limit of $100,000/$300,000 for damages due to its driver's fault, as well as UDIM protection for its insured with a limit of $100,000/$300,000. Thus, under section 143a-2(3) of the Insurance Code, there is no way Delgado can be an underinsured driver. Trujillo recovered under the Allstate policy issued to Delgado for bodily injury coverage because of Delgado's degree of fault in the accident. Additionally, Trujillo seeks to recover under the Allstate policy issued to Delgado because of Marta Zawadska's status as an underinsured driver. Trujillo is an insured person under the terms of the UDIM coverage in the Allstate policy. Accordingly, relying on *Gibbs*, *King*, and these decisions' interpretation of *Hoglund*, we conclude Allstate is entitled to a setoff under the underinsured motorists provisions only for the $20,000 paid by Marta Zawadska's insurance company. *Gibbs*, 242

Ill. App. 3d at 156-57. The ultimate amount of Trujillo's recovery, however, depends upon the amount of her damages, in order to prevent a double recovery. *King*, 269 Ill. App. 3d at 195.

¶ 31    Allstate mainly relied on three decisions of this court in support of its motion for judgment on the pleadings. Similarly, Allstate asserts the same opinions again on appeal. It is instructive to summarize each of these cases to explain why each is distinguishable from this case.

¶ 32    First, in *Zdeb v. Allstate Insurance Co.*, 404 Ill. App. 3d 113 (2010), Zdeb was a pedestrian struck and seriously injured by an automobile, with damages allegedly in excess of $200,000. *Id.* at 114. Zdeb settled with the driver's insurer for the full bodily injury coverage limit of $50,000. *Id.* at 115. Zdeb's policy with Allstate provided UDIM coverage with a limit of $100,000 for bodily injury and automobile medical payments (MP) coverage with a limit of $50,000.[2] *Id.* Zdeb's UDIM coverage, however, was limited by " 'all amounts payable under any workers' compensation law, disability benefits law, or any similar automobile medical payments coverage.' " (Emphasis omitted.) *Id.* Allstate had paid plaintiff $38,952.53 in MP coverage, and took the position it was entitled to deduct this amount (in addition to the $50,000 recovered from the driver's insurer) from Zdeb's UDIM claim. *Id.* Zdeb filed a declaratory judgment action against Allstate to resolve the dispute; the circuit court granted summary judgment in favor of Allstate. See *id.* at 115-16.

¶ 33    This court found nothing in the statute preventing Allstate from reducing its UDIM liability by amounts paid under the MP coverage in the same policy, and the policy authorized the credits. *Id.* at 119. In addition, the *Zdeb* court concluded Allstate's setoff provision was not contrary to any known public policy, as the reduction did not prevent Zdeb from receiving the difference between the underinsured driver's insurance and the amount of UDIM coverage provided in her policy. *Id.* (citing *Sulser*, 147 Ill. 2d at 556). Accordingly, this court affirmed the circuit court's entry of summary judgment. *Zdeb*, 404 Ill. App. 3d at 124.

¶ 34    *Zdeb* does not encompass the coverage issues raised where multiple tortfeasors are involved, as in *Hoglund*, *Gibbs*, and *King*. The claimant in *Zdeb* was attempting to recover under her UDIM and MP coverages based on the actions of a single underinsured tortfeasor. Indeed, in *Zdeb*, this court discussed *Hoglund* at length, but expressly distinguished it on the ground *Hoglund* did not apply to cases involving a single tortfeasor. *Zdeb*, 404 Ill. App. 3d at 119-21.

---

[2]The MP coverage provided:

" 'Allstate will pay to *** an insured person all reasonable expenses actually incurred for necessary medical treatment, medical services or medical products actually provided to the insured person. Hospital, medical, surgical, x-ray, dental, orthopedic and prosthetic devices, pharmaceuticals, eyeglasses, hearing aids, and professional nursing services *** are covered.

Payments will be made only when bodily injury is caused by an accident involving an auto or when [the insured] *** is struck as a pedestrian by a motor vehicle ***.' " *Zdeb*, 404 Ill. App. 3d at 115.

¶ 35	Second, Allstate relied upon *Mercury Indemnity Co. of Illinois v. Kim*, 358 Ill. App. 3d 1 (2005). In *Kim*, the plaintiffs were passengers in a single automobile involved in an accident with multiple collisions. The plaintiffs' driver:

> "failed to obey a stop sign at the intersection of two highways and drove her car into another (the second car). The force of the impact forced that car to roll onto its side and into the path of other oncoming traffic, where it was struck again by a third car. The local sheriff's department and fire department responded to the scene. Approaching the crash site, a fire truck driver lost control of his vehicle and struck a sheriff's deputy." *Id.* at 2.

The vehicle in which plaintiffs were passengers was insured by a Mercury Indemnity Company (Mercury) policy bodily injury liability coverage limits of $100,000 per person and $300,000 per accident, as well as uninsured and underinsured motorist coverage with the same limits. *Id.* Mercury, therefore, attempted to prorate the $300,000 between six victims of the accident. *Id.* Despite the multiple collisions, no other insurance company was involved with regard to the incident.

¶ 36	The *Kim* plaintiffs thus sought payments under both the bodily injury liability and UDIM coverages of the Mercury policy. *Id.* at 2-3. Mercury denied the claim and filed a declaratory judgment action based on an exclusion in the UDIM coverage which provided an underinsured motor vehicle does not include a vehicle covered under the liability provisions of the policy. *Id.* at 3. The circuit court granted summary judgment in favor of Mercury. *Id.* at 4.

¶ 37	This court held the Mercury policy's insured-vehicle exclusion, which prevented stacking of underinsured and liability coverage under the same policy, was not contrary to the provisions of the underinsured motorist statute. *Id.* at 5. The *Kim* court reviewed decisions from other jurisdictions which permitted insured vehicle exclusions to prevent the stacking of underinsured motorist coverage on to liability coverage under a single policy. See *id.* at 6-8 (and numerous cases cited therein). This court observed: "Courts upholding these exclusions, or otherwise denying the availability of liability and underinsured motorist coverage under the same policy, have noted that the underlying purpose of underinsured motorist coverage is to protect the insured from the negligent driving of another, underinsured driver, not of the driver with whom he is riding." (Emphasis omitted.) *Id.* at 8. For these reasons (and others not directly relevant here), the *Kim* court affirmed the summary judgment entered in favor of the insurer. *Id.* at 20.

¶ 38	As with *Zdeb*, the court in *Kim* was faced with a single-tortfeasor situation. Despite the multiple collisions, no other insurance company was involved with regard to the accident. Moreover, we further observe *Hoglund* and its progeny are not discussed in *Kim*. Trujillo seeks recovery not only under the UDIM coverage based on the negligence of the underinsured driver, but also under the bodily injury liability coverage based on the negligence of the insured driver of the vehicle in which she was riding as a passenger. Accordingly, the reasoning in *Kim* is not applicable to this case.

¶ 39	Lastly, Allstate relied on *Pahn v. State Farm Mutual Automobile Insurance Co.*, 291 Ill. App. 3d 343 (1997). In *Pahn*, the issue on appeal was whether an insurance company was entitled to enforce a provision of its policy which prohibits recovery of UDIM benefits where

- 11 -

UM benefits were recovered for the same accident and on the same policy by the same person. *Id*. at 343-44. Pahn was a passenger in a vehicle driven by her husband that was struck by an automobile driven by William Buss (Buss). Both Buss and Pahn's husband were at fault. *Id*. State Farm paid Pahn $100,000 on her claim under the UM provision of her husband's policy, because an insured woman is legally entitled to recover from her tortfeasor husband under an uninsured motorist policy provision. *Id*. State Farm denied Pahn's UDIM claim, based on policy language providing there was no UDIM coverage if the UM coverage applied to the accident. See *id*. Pahn filed a declaratory judgment action to determine the limits of coverage; the circuit court granted summary judgment to State Farm. *Id*. at 344-45.

¶ 40    The *Pahn* court determined the circumstances of the case did not give rise to an ambiguity and State Farm was entitled to enforcement of the unambiguous anti-stacking provision. *Id*. at 345-46. The court also rejected the argument that enforcement of the exclusionary provision is against public policy. *Id*. at 346. In particular, section 143a-2(5) of the Insurance Code expressly provided in part: " 'Notwithstanding the provisions of this Section, an insurer shall not be prohibited from solely providing a combination of uninsured and underinsured motorist coverages where the limits of liability under each coverage is in the same amount.' " *Id*. (quoting 215 ILCS 5/143a-2(5) (West 1996)). Accordingly, this court affirmed the summary judgment entered in favor of the insurer. *Id*.

¶ 41    *Pahn*, unlike *Zdeb* and *Kim*, involved two tortfeasors; both Buss and Pahn's husband were at fault. *Pahn*, however, concerned the stacking of UM and UDIM coverage, not a setoff for bodily injury liability payments. As the *Pahn* court noted, section 143a-2(5) of the Insurance Code expressly allows insurers to " 'solely provid[e] a combination of uninsured and underinsured motorist coverages where the limits of liability under each coverage is in the same amount.' " *Id*. (quoting 215 ILCS 5/143a-2(5) (West 1996)). Thus, public policy expressly permitted the limitation of liability.

¶ 42    In this case, Trujillo is not seeking to recover under Allstate's UM coverage. Rather, as in *Gibbs*, we are faced with claims against both the bodily injury liability coverage for the insured driver's fault, and the UDIM coverage for the underinsured driver's fault, which are distinct. Section 143a-2(4) of the Insurance Code permits a reduction for "amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained *on the underinsured motor vehicle*." (Emphasis added.) 215 ILCS 5/143a-2(4) (West 2008). The statute does not expressly permit the reduction of UDIM benefits for amounts recovered under the bodily injury coverage maintained on the fully insured vehicle. The relevant public policy, therefore, is set forth in *Hoglund* and its progeny. We observe a tension may exist–particularly in the multiple tortfeasor context–between the conception of UDIM coverage as intended to place the insured in the same position as if injured by a motorist with insurance in the same amount as the UDIM policy, or as intended as a "gap-filler" which promises no more than the amount of the insured's UDIM coverage. *Hall*, 277 Ill. App. 3d at 767. We conclude, however, the first conception is the preferred one, particularly where it is appropriate to favor the claimant in this context. See *id*.

¶ 43    In short, as previously noted, "[p]arties to a contract may agree to any terms they choose unless their agreement is contrary to public policy." *Sulser*, 147 Ill. 2d at 559. Under the facts of this case, however, the resulting latent ambiguity in the Allstate policy allows Trujillo to

seek both bodily injury and UDIM benefits. See *Gibbs*, 242 Ill. App. 3d at 156-57. Accordingly, the circuit court erred in granting judgment on the pleadings in favor of Allstate.[3]

¶ 44 Although Trujillo filed a cross-motion for judgment on the pleadings, the issue of whether Trujillo may recover the full $80,000 she seeks from Allstate depends on the total extent of her damages, because *Hoglund* does not permit a claimant a windfall or double recovery. See *King*, 269 Ill. App. 3d at 195. The pleadings do not settle the genuine issue of material fact regarding the amount of Trujillo's damages. Accordingly, we decline to enter judgment on the pleadings in favor of Trujillo and remand the case for further proceedings consistent with this order to ensure Trujillo does not receive a double recovery.

¶ 45                                                    CONCLUSION

¶ 46 For all of the aforementioned reasons, the judgment of the circuit court in favor of Allstate is reversed and the case is remanded for further proceedings.

¶ 47 Reversed and remanded.

---

[3]Although not necessary to our disposition of this appeal, we observe in passing the judicial trend in jurisdictions considering the issue over the past 18 years has been to conclude the type of setoff asserted here violates the public policy undergirding UDIM coverage. See 1 Alan I. Widiss & Jeffrey E. Thomas, Uninsured and Underinsured Motorist Insurance § 14.6, at 949-50 (3d ed. 2005) (and cases cited therein). Indeed, the Nevada Supreme Court has distinguished and discussed this court's decision in *Kim* as involving two claims on the sole negligence of a permissive driver. *Delgado v. American Family Insurance Group*, 217 P.3d 563, 570 n.6 (Nev. 2009).