# Illinois Official Reports

## Appellate Court

*Continental Casualty Co. v. MidStates Reinsurance Corp.*,
2014 IL App (1st) 133090

| | |
|---|---|
| Appellate Court Caption | CONTINENTAL CASUALTY COMPANY, Plaintiff-Appellant, v. MIDSTATES REINSURANCE CORPORATION, Defendant-Appellee. |
| District & No. | First District, Second Division<br>Docket No. 1-13-3090 |
| Filed | December 16, 2014 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CH-42911; the Hon. Mary L. Mikva, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | William M. Sneed and Lisa M. Schwartz, both of Sidley Austin LLP, of Chicago, for appellant.<br><br>Mark G. Sheridan, of BatesCarey LLP, of Chicago, for appellee. |

| Panel | PRESIDING JUSTICE SIMON delivered the judgment of the court, with opinion. |
| | Justices Neville and Liu concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff Continental Casualty Company filed a complaint for declaratory judgment and other relief on November 30, 2012, seeking a declaration of the rights and obligations arising under multiple facultative reinsurance contracts issued to plaintiff by defendant MidStates Reinsurance Corporation. Defendant reinsured plaintiff for shares of policies between 1981 and 1984, under which plaintiff sought coverage in 2003-05 as a result of numerous claims resulting from environmental liabilities covered under the policies. Defendant made payments on the claims for what it claims were the total amount of reinsurance limits provided by each certificate. Plaintiff sought declaratory relief, alleging that defendant had breached its contracts by failing to pay the amounts due, and damages.

¶ 2    Defendant sought judgment on the pleadings, asserting that the certificates were not ambiguous and clearly provided limits on the amount reinsured. The trial court granted defendant's motion for judgment on the pleadings, finding the reinsurance certificates were not ambiguous and limited both losses and expenses assumed by defendant. Plaintiff appeals, arguing that the certificates are not facially clear, complete, and unambiguous contracts and do not provide a limit of coverage as found by the circuit court. For the following reasons, we affirm the judgment of the circuit court.

¶ 3                                              I. BACKGROUND

¶ 4    This case involves the interpretation of five reinsurance policies issued to plaintiff by defendant. One reinsurance policy related to an excess third-party liability policy plaintiff issued to RSR Corporation in 1981. The remaining four reinsurance policies covered a 1979 commercial casualty policy that plaintiff issued to Borg-Warner Corporation. All of the certificates issued by defendant, through the agent for its predecessor, are two-page documents with specific policy information on the first page and an identical list of 12 policy "Provisions" on the second page.

¶ 5    Paragraph 7 of the certificates contains the key language in this case, with that paragraph being amended by the parties by endorsement to two of the certificates. Paragraph 7 of each certificate, as amended, provides in full:

| Item A Description of Coverage [Account / Certificate No.] | Item B Original Policy Limits | Item C Reinsured's Retention | Item D Reinsurance Assumption |
|---|---|---|---|
| Excess general liability [RSR / DAR 13894] | $500,000 each occ / $500,000 agg csl | $100,000 each occ / $500,000 agg csl | 45% p/o $400,000 each occ / nil agg excess $100,000 each occ / $500,000 agg csl |

| | | | |
|---|---|---|---|
| Excess general liability [Borg-Warner / DAR 14263] | $1,000,000 occ/4,500,000 agg bi $1,000,000 occ / $4,500,000 agg pd | NIL this layer | 25% p/o $500,000 ea occ/NIL agg bi & pd separately excess $500,000 ea occ/$4,500,000 agg bi & pd separately |
| Excess general liability [Borg-Warner / DAR 14265] | $1,000,000 occ/4,500,000 agg bi $1,000,000 occ / $4,500,000 agg pd | 20% p/o the difference between $500,000 occ/NIL agg bi & pd separately and $350,000 occ inclusive expense/$4,500,000 agg bi & pd separately | 20% p/o difference between $500,000 occ/NIL agg bi & pd separately and $350,000 occ inclusive of expense/$4,500,000 agg bi & pd separately |
| Excess general liability [Borg-Warner / DAR 16674] | $1,000,000 occ/4,500,000 agg bi $1,000,000 occ / $4,500,000 agg pd | 10% p/o the difference between $500,000 occ/NIL agg bi & pd separately and $350,000 occ inclusive expense/$4,500,000 agg bi and pd separately | 22.5% p/o difference between $500,000 occ/NIL agg bi & pd separately and $350,000 occ inclusive expense/$4,500,000 agg bi and pd separately |
| Excess general liability [Borg-Warner / DAR 16676] | $1,000,000 occ/4,500,000 agg bi $1,000,000 occ / $4,500,000 agg pd | NIL this layer | 25% p/o $500,000 ea occ/NIL agg excess $500,000 ea occ/$4,500,000 agg bi & pd separately |

¶ 6      The Provisions of the reinsurance certificates were provided on the second page of each certificate, the relevant Provisions providing:

"A. The Company warrants to retain for its own account or that of its treaty reinsurer(s) the amount of liability specified in Item 7C unless otherwise provided herein, and the liability of the Reinsurer in Item 7D shall follow that of the Company, except as otherwise specifically provided herein, and shall be subject in all respects to all the terms and conditions of the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto which in any manner affect this certificate, and shall make available for inspection and place at the disposal of the Reinsurer's authorized representatives at reasonable times any of its records relating to this reinsurance or claims in connection therewith.

B. Prompt notice shall be given to the Reinsurer by the Company of any claim, occurrence or accident which appears likely to involve this reinsurance and while the Reinsurer does not undertake to investigate or defend claims or suits it shall nevertheless have the right and be given the opportunity to associate with the Company and its representatives at the Reinsurer's expense in the defense and control of any claim, suit or proceeding involving this reinsurance, with the full cooperation of the Company.

***

D. All claims involving this reinsurance, when settled by the Company, shall be binding on the Reinsurer, which shall be bound to pay its proportion of such settlements, and in addition thereto, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment with respect to business accepted on an excess of loss basis and in the ratio that the Reinsurer's limit of liability bears to the Company's gross limit of liability with respect to business accepted on a pro rata basis, its proportion of expenses, other than Company salaries and office expenses, incurred by the Company in the investigation and settlement of claims or suits and, with the prior consent of the Reinsurer to trial court proceedings, its proportion of court costs and interest on any judgment or award."

¶ 7    In the 1990s and early 2000s, RSR and Borg-Warner became the subject of numerous claims for injuries from environmental concerns related to hazardous waste or asbestos issues at the insured's properties. Plaintiff defended RSR, litigated coverage of RSR, and paid to settle claims against RSR. Plaintiff submitted billings and proofs of loss to defendant related to two separate occurrences. Defendant made payments of $180,000 for each occurrence in 2004, remitting payment along with a letter and legal memorandum explaining its view of its liability under the reinsurance certificate.

¶ 8    Following years of litigation concerning plaintiff's coverage of Borg-Warner, a settlement agreement was entered between the parties. Plaintiff submitted billings to defendant under the terms of the reinsurance polices related to these claims. In 2004, defendant made payments to plaintiff up to the amount that defendant claimed was the limit on each reinsurance certificate.

¶ 9    Plaintiff did not receive payment of all amounts billed and disputed defendant's claims concerning the limits under the reinsurance certificates. Plaintiff filed the underlying complaint asserting breach of contract claims against defendant. Plaintiff sought declaratory relief that the reinsurance certificates did not include limits on expenses, that defendant breached the agreements, and damages. Defendant filed a motion for judgment on the pleadings, asserting that the reinsurance certificates were unambiguous and defendant properly paid the limit on each of plaintiff's claims.

¶ 10    In a written opinion, the circuit court granted defendant's motion for judgment on the pleadings. The court found that Provisions A and D of the reinsurance certificates did not remove expenses from the amount of reinsurance assumed, but also did not specifically indicate that expenses were not subject to those limits. Citing to defendant's principle authority, *Bellefonte Reinsurance Co. v. Aetna Casualty & Surety Co.*, 903 F.2d 910 (2d Cir. 1990), and the line of cases that followed the "*Bellefonte* principle" that facultative reinsurance certificate limits cap reinsurance for both indemnity and expenses, the court found that the reinsurance certificates were not ambiguous and limited both losses and expenses assumed by defendant to the limits stated in the certificates. This appeal followed.

¶ 11                                  II. ANALYSIS

¶ 12    Plaintiff argues on appeal that the trial court erred in granting defendant judgment on pleadings pursuant to section 2-615(e) of the Code of Civil Procedure. 735 ILCS 5/2-615(e) (West 2010). Judgment on the pleadings is similar to summary judgment in that judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment; however, it is limited to the pleadings. *Allstate Property & Casualty Insurance Co. v. Trujillo*, 2014 IL App (1st) 123419, ¶ 15. The moving party concedes the truth of all

well-pleaded facts in the complaint, and the court must construe the evidence, and reasonable inferences, in favor of the nonmoving party. *Id.* A reviewing court reviews the grant or denial of judgment on the pleadings *de novo*. *Id.*

¶ 13 The trial court considered the five reinsurance certificates issued to plaintiff by defendant. In interpreting contracts such as the reinsurance certificates, we follow the "four corners" approach, presuming the document speaks for itself and the intentions of the parties must be determined from the language they have used in drafting the agreement. *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457 (1999). An ambiguity does not exist in a contract simply because the parties disagree on the meaning of a provision, but when the contract contains language susceptible to more than one reasonable interpretation. *Ringgold Capital IV, LLC v. Finley*, 2013 IL App (1st) 121702. Only then may extrinsic evidence be considered to establish the intent of the parties. *Id.*

¶ 14 In the instant matter, the circuit court found the language in the reinsurance certificates was clear and unambiguous and that the "reinsurance assumed" provision of Item D created an overall limitation on the obligation to reinsure both losses and expenses. The court then found the *Bellefonte* case and following cases interpreting this same, or similar, language persuasive. We agree with the circuit court and hold that the certificates provided a clear policy limit, inclusive of expenses, and judgment on the pleadings was properly granted.

¶ 15 In *Bellefonte*, the Second Circuit considered six reinsurance agreements between the plaintiff and six reinsurers that contained substantially similar terms. *Bellefonte*, 903 F.2d at 911. The agreements articulated that reinsurance was provided "subject to the terms, conditions and amount of liability set forth herein" and a "Reinsurance Accepted" provision that called for a per-occurrence amount of coverage. (Internal quotation marks omitted.) *Id.* The agreements also contained third and fourth provisions containing "follow the form" and "follow the fortunes" clauses. *Id.*

¶ 16 The court found that the first two provisions provided an express cap for the certificates and the plaintiff could not recoup defense costs beyond that cap as "the limitation is to be a cap on all payments by the reinsurer." (Internal quotation marks omitted.) *Id.* at 913. The court reasoned that any other conclusion would effectively eliminate the stated limitation on the reinsurer's liability and the "follow the fortunes" clause requires the reinsurer to bear the risks of the insurer, but only to that stated limit. *Id.* Furthermore, the court found that the phrase "in addition thereto" in the "follow the fortunes" clause was included "merely to differentiate the obligations for losses and expenses. The phrase in no way exempts defense costs from the overall monetary limitation in the certificate. *** In our view, the 'in addition thereto' provision merely outlines the different components of potential liability under the certificate. It does not indicate that either component is not within the overall limitation." *Id.*

¶ 17 This analysis and conclusion by the *Bellefonte* court that reinsurer "liability for defense costs will not extend beyond the limit of liability as stated in the reinsurance agreement" has been widely accepted and cited by the courts and experts. 1A Steven Plitt *et al.*, Couch on Insurance 3d § 9:29 (rev. 2014); *Unigard Security Insurance Co. v. North River Insurance Co.*, 4 F.3d 1049 (2d Cir. 1993); *Pacific Employers Insurance Co. v. Global Reinsurance Corp. of America*, No. 09-6055, 2010 WL 1659760 (E.D. Pa. Apr. 23, 2010). The contract terms involved in *Bellefonte* are similar to the provisions involved in the instant reinsurance certificates. Provision A, the "follow the form" provision, provides that, "except as specifically provided herein" the reinsurance certificate was to mirror the underlying insurance policies.

Provision D, the "follow the fortunes" provision, provides that the reinsurer must pay its proportion of settlements, the ratio of losses to the insured's gross loss payment, and the ratio that the reinsurer's limit of liability bears as to its proportion of expenses and costs. More importantly, under Item D, reinsurance assumed, a ratio of total liability assumed is provided to calculate a monetary limitation.

¶ 18    As found by the circuit court, nothing in these provisions can be said to remove expenses from the overall liability cap provided in Item D, reinsurance assumed. Plaintiff asserts that the terms of reinsurance are ambiguous because in Items C and D, two of the five certificates include the language "inclusive of expenses," while the other certificates are silent on this issue. While those two certificates contain that language, there is no other differentiation of these costs to separate expenses from the cap provided by Item D. While plaintiff takes issue with defendant's labeling this "belt and suspenders" drafting, a plain reading of the terms in the certificates indicates this characterization is proper. By the language, and very nature of the excess of liability insurance, this inclusion clearly appears to be an abundance of caution rather than an intention to exclude expenses from the liability cap.

¶ 19    Plaintiff's reliance on *Penn Re, Inc. v. Aetna Casualty & Surety Co.*, No. 85-385-CIV-5, 1987 WL 909519 (E.D.N.C. June 30, 1987), is misplaced. *Penn Re* was decided before *Bellefonte* and does not enjoy the same support in case law. The *Penn Re* court examined the provisions in the reinsurance certificates before it that was similar to the instant certificates and highlighted the "in addition thereto" language relating to costs to find that the reinsurer was liable for costs above the policy limit for losses. *Id.* at *8-10. As addressed above, we disagree with this reading and follow the reasoning in *Bellefonte* and following cases.

¶ 20    Likewise, plaintiff's reliance on *International Surplus Lines Insurance Co. v. Fireman's Fund Insurance Co.*, No. 88 C 320, 1990 WL 141464 (N.D. Ill. Sept. 20, 1990) (*ISLIC*), is misplaced as that case is distinguishable. The *ISLIC* court did find a reinsurance contract with language similar to the instant matter to be ambiguous, with one key difference; there was no stated aggregate limit in that case. *Id.* at *4. Therefore, the court found the precise amount of coverage inherently ambiguous, whereas in the instant matter the parties included language establishing aggregate limits.

¶ 21    Furthermore, we will not consider extrinsic evidence to determine if a latent ambiguity exists under the provisional admission approach discussed in *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457 (1999), as that court did not rule on the issue and the four corners rule of contract interpretation remains the law in Illinois. *River's Edge Homeowners' Ass'n v. City of Naperville*, 353 Ill. App. 3d 874, 880 (2004). We have found the certificates clearly and unambiguously provide for an aggregate policy limit that includes both losses and expenses. For the foregoing reasons, we affirm the judgment of the circuit court granting plaintiff judgment on the pleadings.

¶ 22                                    III. CONCLUSION
¶ 23    For the reasons stated, we affirm the judgment of the circuit court.

¶ 24    Affirmed.