# United States Court of Appeals for the Federal Circuit

01-5011, -5012

ANAHEIM GARDENS, B-L ASSOCIATES, CEDAR GARDENS ASSOCIATES, C-W ASSOCIATES, DENISE A. KELLENBECK (doing business as VICTORIAN ARMS APARTMENTS), EARL W. KELLENBECK, FLORIN MEADOWS I, LTD., FLORIN MEADOWS II, LTD., FRANCES T. WARD, GLENVIEW GARDENS LIMITED PARTNERSHIP, HILLVIEW TOWNHOUSES LIMITED, HILLVIEW TOWNHOUSES LIMITED NO. 1, INDIAN HEAD MANOR LIMITED PARTNERSHIP I, J.D.V. WARD, JAMES W.Y. WONG, JEWEL LAKE VILLA II, JOSEPH BIAFORA and STEFI BIAFORA, METRO WEST LIMITED, MILLWOOD ASSOCIATES LIMITED PARTNERSHIP, NAPA PARK APARTMENTS LIMITED PARTNERSHIP, NORMAN M. KRONICK and LOUIS DULIEN (doing business as HALAWA VIEW APARTMENTS), ONTARIO TOWNHOUSES LIMITED PARTNERSHIP, PETER H.Y. HSI and PRISCILLA L.F. HSI (doing business as GENERAL PARTNERS OF WAIPAHU TOWER), ROCK CREEK TERRACE LIMITED PARTNERSHIP, SIERRA VISTA ONE, SILVERLAKE VILLAGE, THE PALOMAR APARTMENTS, THETFORD PROPERTIES III, LIMITED PARTNERSHIP, THETFORD PROPERTIES IV, LIMITED PARTNERSHIP, WASHINGTON PLAZA PARTNERS, LTD., 185-225 PARKHILL CORP., 620 SU CASA POR CORTEZ, 825 SAN TOMAS APARTMENTS, 3740 SILVERLAKE VILLAGE, and 5324 FOOTHILL APARTMENTS,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

----------------------------------------------------------------

ALCONQUIN HEIGHTS ASSOCIATES, L.P., BRANDY HILL COMPANY, BROOKSIDE MANOR ASSOCIATES LIMITED PARTNERSHIP, BUCKMAN GARDENS LIMITED PARTNERSHIP, CHAUNCY HOUSE COMPANY, CROMWELL COURT COMPANY, COUNTRY TOWNE APARTMENTS PARTNERSHIP, DOLLY ANN APARTMENTS LIMITED PARTNERSHIP, EMORY GROVE LIMITED PARTNERSHIP, FIRST LANDMARK ASSOCIATES LIMITED PARTNERSHIP, FOREST GLEN LIMITED DIVIDEND HOUSING ASSOCIATION, FORT HEATH ASSOCIATES, GARRISON FOREST ASSOCIATES, GLENARDEN LIMITED PARTNERSHIP, JODANI ASSOCIATES, L.P., KIMBERLY ASSOCIATES, KING'S GRANT COMPANY, LEADER HOUSE ASSOCIATES AND LEADER HOUSING CO., INC., NEW AMSTERDAM ASSOCIATES AND NEW AMSTERDAM HOUSES, INC., PINE CREST COMPANY, RIVERSIDE VILLAGE COMPANY, SUBURBIA ASSOCIATES LIMITED PARTNERSHIP, SUEHAR ASSOCIATES, L.P., TOWER WEST ASSOCIATES, L.P. AND TOWER WEST, INC., and TOWN & COUNTRY APARTMENTS AND TOWNHOUSES,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

Harry J. Kelly, Nixon Peabody LLP, of Washington, DC, argued for plaintiffs-appellants. Of counsel was Charles L. Edson.

David Harrington, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Brian M. Simkin, Assistant Director.

Appealed from: United States Court of Federal Claims

Judge Robert H. Hodges, Jr.

# United States Court of Appeals for the Federal Circuit

01-5011, -5012

ANAHEIM GARDENS, B-L ASSOCIATES, CEDAR GARDENS ASSOCIATES, C-W ASSOCIATES, DENISE A. KELLENBECK (doing business as VICTORIAN ARMS APARTMENTS), EARL W. KELLENBECK, FLORIN MEADOWS I, LTD., FLORIN MEADOWS II, LTD., FRANCES T. WARD, GLENVIEW GARDENS LIMITED PARTNERSHIP, HILLVIEW TOWNHOUSES LIMITED, HILLVIEW TOWNHOUSES LIMITED NO. 1, INDIAN HEAD MANOR LIMITED PARTNERSHIP I, J.D.V. WARD, JAMES W.Y. WONG, JEWEL LAKE VILLA II, JOSEPH BIAFORA and STEFI BIAFORA, METRO WEST LIMITED, MILLWOOD ASSOCIATES LIMITED PARTNERSHIP, NAPA PARK APARTMENTS LIMITED PARTNERSHIP, NORMAN M. KRONICK and LOUIS DULIEN (doing business as HALAWA VIEW APARTMENTS), ONTARIO TOWNHOUSES LIMITED PARTNERSHIP, PETER H.Y. HSI and PRISCILLA L.F. HSI (doing business as GENERAL PARTNERS OF WAIPAHU TOWER), ROCK CREEK TERRACE LIMITED PARTNERSHIP, SIERRA VISTA ONE, SILVERLAKE VILLAGE, THE PALOMAR APARTMENTS, THETFORD PROPERTIES III, LIMITED PARTNERSHIP, THETFORD PROPERTIES IV, LIMITED PARTNERSHIP, WASHINGTON PLAZA PARTNERS, LTD., 185-225 PARKHILL CORP., 620 SU CASA POR CORTEZ, 825 SAN TOMAS APARTMENTS, 3740 SILVERLAKE VILLAGE, and 5324 FOOTHILL APARTMENTS,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

-------------------------------------------------------------------

ALCONQUIN HEIGHTS ASSOCIATES, L.P., BRANDY HILL COMPANY, BROOKSIDE MANOR ASSOCIATES LIMITED PARTNERSHIP, BUCKMAN GARDENS LIMITED PARTNERSHIP, CHAUNCY HOUSE COMPANY, CROMWELL COURT COMPANY, COUNTRY TOWNE APARTMENTS PARTNERSHIP, DOLLY ANN APARTMENTS LIMITED PARTNERSHIP, EMORY GROVE LIMITED PARTNERSHIP, FIRST LANDMARK ASSOCIATES LIMITED PARTNERSHIP, FOREST GLEN LIMITED DIVIDEND HOUSING ASSOCIATION, FORT HEATH ASSOCIATES, GARRISON FOREST ASSOCIATES, GLENARDEN LIMITED PARTNERSHIP, JODANI

ASSOCIATES, L.P., KIMBERLY ASSOCIATES, KING'S GRANT COMPANY, LEADER HOUSE ASSOCIATES AND LEADER HOUSING CO., INC., NEW AMSTERDAM ASSOCIATES AND NEW AMSTERDAM HOUSES, INC., PINE CREST COMPANY, RIVERSIDE VILLAGE COMPANY, SUBURBIA ASSOCIATES LIMITED PARTNERSHIP, SUEHAR ASSOCIATES, L.P., TOWER WEST ASSOCIATES, L.P. AND TOWER WEST, INC., and TOWN & COUNTRY APARTMENTS AND TOWNHOUSES,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED: March 24, 2006

_____

Before LOURIE, RADER, and LINN, Circuit Judges.

RADER, Circuit Judge.

The United States Court of Federal Claims dismissed two regulatory takings cases, Anaheim Gardens v. United States, No. 93-655C (Anaheim); and Algonquin Heights v. United States, No. 97-582C (Algonquin). The trial court determined that these claims are not ripe for suit because the parties have not obtained a "final decision" from the U.S. Department of Housing and Urban Development (HUD). In light of Cienega Gardens v. United States, 265 F.3d 1237 (Fed. Cir. 2001) (Cienega II), this court reverses and remands these cases for further findings of fact on whether appellants can demonstrate evidence of "administrative futility" that would exempt them from exhausting their administrative remedies.

01-5011,-5012

These cases are intertwined with another takings case, <u>Cienega Gardens v. United States</u>, 33 Fed. Cl. 196 (1995) (original case) (<u>Cienega Gardens</u>).[1] The Court of Federal Claims dismissed the <u>Anaheim</u> and <u>Algonquin</u> cases on the basis of its ruling in <u>Cienega Gardens v. United States</u>, 46 Fed. Cl. 506 (2000) (<u>Cienega Remand</u>). At that time, this court had not issued its <u>Cienega II</u> opinion. Instead, following the issuance of this court's opinion in <u>Cienega Gardens</u> (<u>Cienega Gardens v. United States</u> 194 F.3d 1231 (Fed. Cir. 1998) (<u>Cienega I</u>)),[2] the Court of Federal Claims issued its revised second decision that is set out in <u>Cienega Remand</u>. In <u>Cienega Remand</u>, the Court of Federal Claims ruled on cross-motions for summary judgment, relying on <u>Greenbrier v. United States</u>, 193 F.3d 1348 (Fed. Cir. 1999), and concluded that the <u>Cienega Gardens</u>' plaintiffs' claims were not ripe.

Following issuance of its <u>Cienega Remand</u> opinion, the Court of Federal Claims turned its attention back to the <u>Anaheim</u> and <u>Algonquin</u> cases now before this court. On May 18, 2000, the Court of Federal Claims entered identical orders in both the <u>Anaheim</u> and <u>Algonquin</u> cases stating that it "intend[ed] to dismiss all related cases pursuant to [the <u>Cienega Remand</u>] decision." The Court of Federal Claims' May 18, 2000 order further directed the parties to "notify the court by June 1" if the facts of their cases could

---

[1] <u>Cienega Gardens v. United States</u>, 33 Fed. Cl. 196 (1995), *judgment vacated by*, <u>Cienega Gardens v. United States</u>, 194 F.3d 1231 (Fed. Cir. 1998) (<u>Cienega I</u>), *on remand to*, <u>Cienega Gardens v. United States</u>, 46 Fed. Cl. 506 (2000) (<u>Cienega Remand</u>); *aff'd in part, rev'd in part*, <u>Cienega Gardens v. United States</u>, 265 F.3d 1237 (Fed. Cir. 2001) (<u>Cienega II</u>), *appeal after remand*, <u>Cienega Gardens v. United States</u>, 331 F.3d 1319 (Fed. Cir. 2003) (<u>Cienega III</u>), *on remand to,* <u>Cienega Gardens v. United States</u>, 67 Fed. Cl. 434 (Fed. Cl. 2005) (<u>Cienega Second Remand</u>).
[2] <u>Cienega I</u> remanded the appeal to the Court of Federal Claims for further decision in light of this court's opinion that the necessary contractual privity required under the Tucker Act between the <u>Cienega Gardens</u>' plaintiffs and the Government was lacking.

be "distinguished from those in the <u>Cienega [Remand]</u> case." If not distinguishable, the May 18, 2000 order stated: "[W]e will order the clerk to dismiss this case."

On August 16, 2000, relying upon its <u>Cienega Remand</u> opinion and <u>Greenbrier</u>, the Court of Federal Claims entered an order and Court of Federal Claims Rule 58 judgment dismissing all of the <u>Anaheim</u> and <u>Algonquin</u> claims. R. Ct. Fed. Cl. 58. In dismissing their claims, the Court of Federal Claims concluded that they could not satisfy the <u>Greenbrier</u> ripeness standards. In addition, this court notes that, though unclear from the order, the Court of Federal Claims seems to have *sua sponte* dismissed these cases under its continuing obligation to ensure it had continuing subject matter jurisdiction of its cases under Court of Federal Claims Rule 12(h)(3); or for failure to state a claim under Court of Federal Claims Rule 12(b)(6). Regardless, following the August 16, 2000 dismissal orders, the parties timely appealed both cases to this court.

Upon appeal to this court, the parties again agreed to stay their appellate proceedings in anticipation of this court's ruling on the <u>Cienega Gardens</u> case (following the <u>Cienega Remand</u> opinion). This second appeal in <u>Cienega Gardens</u> also featured the issue of ripeness. The parties agreed that this court's ruling on ripeness in the second <u>Cienega Gardens</u> appeal would apply to their dismissed regulatory takings claims.

On September 18, 2001, this court issued its second opinion in <u>Cienega Gardens</u>, which reversed the Court of Federal Claims' decision and found the takings claims ripe for adjudication. <u>Cienega II</u>, 265 F.3d at 1248. Nevertheless, after remand, <u>Cienega Gardens</u> was, for the third time, appealed to this court on the issue of, *inter*

*alia*, whether the <u>Cienega Gardens</u> plaintiffs had vested property rights that could be violated by an uncompensated taking. Therefore, after the filing of a second unopposed motion to stay the appellate proceedings herein, on May 3, 2002, this court entered a second order staying the proceedings pending outcome of the third <u>Cienega Gardens</u> appeal.

In the third <u>Cienega Gardens</u> appeal, this court ruled that all of the <u>Cienega Gardens</u> plaintiffs "had vested property interests under the Fifth Amendment in their contractual and regulatory rights to post-twentieth-year prepayment[,] and under real property law[,] to repossess." <u>Cienega Gardens v. United States</u>, 331 F.3d 1319, 1353 (Fed. Cir. 2003) (<u>Cienega III</u>). In addition, on four of the <u>Cienega Gardens'</u> plaintiffs' claims (the Model Plaintiffs), for whom a factual record had been developed and presented to the court, this court ruled that they had vested property interests that became a compensable, temporary, regulatory taking because a government regulation conflicted with their investment-backed expectations in a twenty-year prepayment plan. <u>Id.</u> at 1353. However, this court remanded the remaining <u>Cienega Gardens'</u> plaintiffs' claims for further development of the facts on liability and damages. <u>Id.</u> at 1354. As a result, this court now applies the <u>Cienega II</u> and <u>Cienega III</u> holdings to the Court of Federal Claims' dismissal of both appellants' entire cases.

**II.**

Under the National Housing Act of 1954, as amended in the 1960s, Housing Act of 1961, P.L. 87-70, 75 Stat. 149 (1961), appellants agreed to construct and maintain housing for low-income renters in exchange for HUD's provision of mortgage insurance and interest subsidies. National Housing Act of 1954, P.L. 560, § 221(a), 68 Stat. 599

(1954); Conf. Report, H. Rep. No. 2271, 83rd Cong., 2d Sess. 70 (1954) (codified at 12 U.S.C. §§ 1701, et seq.) (the Act). Before the modifications to the Act in the mid-1980s, investors could pay off their mortgages and convert to market-rate housing after twenty years, without seeking permission from HUD to pay off their mortgages. However, in the mid-1980s, faced with the loss of much low-income housing due to investors leaving the program, Congress passed two new laws: (1) the Emergency Low-Income Housing Preservation Act of 1987, Pub. L. No. 100-242, tit. II, 101 Stat. 1877 (1988) (codified at 12 U.S.C. §§ 1715, et seq. (1988)) (ELIHPA); and (2) the Low-Income Housing Preservation and Resident Homeownership Act of 1990, Pub. L. No. 101-625, tit. VI, 104 Stat 4249 (1990) (codified at 12 U.S.C. §§ 4101, et seq. (1994)) (LIHPRHA). Both the ELIHPA and LIHPRHA banned mortgage prepayment without HUD approval. In addition, the Acts set very high the statutory conditions for HUD approval of a mortgage pre-payment plan. As a result, because investors could not prepay mortgages and turn their properties into better investments, many felt they had effectively lost the use of their property.

Appellants sued for breach of contract and a regulatory taking because they believe their inability to prepay their mortgages without HUD approval is a compensable taking. They pled that, under LIHPRHA, they filed Notices of Intent (NOIs)[3] to prepay or seek compensation. Nevertheless, following submission of the appellants' NOIs, they claim that HUD did not provide the requisite appraisals within the four-month period required under LIHPRHA. According to the appellants, without the appraisals, they

---

[3] Within thirty days after the NOI is submitted, HUD notifies the property owner of the need to obtain an appraisal of the project. Both HUD and the property owner must complete appraisals and must do so within four months. If the appraisals yield different values, and HUD and the property owner cannot agree on the project's value, then they are required to obtain a third appraisal. 12 U.S.C. § 4103 (2001).

could not comply with LIHPRHA provisions. They also allege that HUD delayed in providing the Preservation Capital Needs Assessments (PCNAs)[4], another step preceding any filing of a Plan of Action (PA). The PA, in turn, is a prerequisite for requesting prepayment.

Specifically, appellant Thetford claims it filed its NOI, and should have received its PCNA within the statutory sixty-day deadline. Instead HUD did not provide the PCNA for approximately five months, which then delayed Thetford's completion and submission of its own appraisal until after the statutory deadline. HUD was also supposed to concurrently provide its own appraisal on Thetford's property, but allegedly did not do so until more than eight months after the statutory deadline. At the time of the filing of the appellants' complaint, and fifteen months following its commencement of the LIHPRA process, Thetford alleged it still had not received the necessary "preservation value" information from HUD. Appellants also pled that appellant Napa Park Apartments had, likewise, encountered similar fatal delays.

The Government contends that <u>Greenbrier</u> governs appellants' case because they have not shown futility. The Government also contends that appellants have admitted that their case should be governed by <u>Greenbrier</u> because they admitted their cases were factually indistinguishable from <u>Greenbrier</u>.

Appellants present the following issues for review: (1) whether appellants are excused from exhausting their administrative remedies before filing suit because HUD has no discretion to grant relief under the LIHPRHA; (2) whether appellants possess a

---

[4] In addition to the acquisition of appraisals, HUD is required to provide the PCNA. These are to be completed, and included with the appraisals, within sixty days of HUD's receipt of the NOIs. Within nine months of the property owner's filing of the NOI, HUD must notify the owner of the "preservation value" of the property, the "preservation rents" and the "federal cost limits." 12 U.S.C. § 4103-4105 (2001).

vested property interest in the right to pre-pay their mortgages after the twenty year deadline agreed to at the inception of HUD's and appellants' agreements; and (3) if so, then whether enactment of the LIHPRHA constituted a compensable taking of the appellants' vested property interest in their right to pre-pay their mortgages after twenty years, in violation of the Fifth Amendment.

Consideration of these issues is premature. For review, this court only has the dismissal before it. The record on appeal does not contain a full factual record on the question of "administrative futility," which in turn controls the ripeness question. Until "ripeness" is determined, this court cannot reach the remaining issues.

However, on the question of ripeness, Greenbrier does not control the outcome of this case. Rather, in making a determination, this court must also take Cienega II into account. In addition, in this case, the Court of Federal Claims dismissed appellants' complaints *sua sponte*—as opposed to following the grant of a motion for summary judgment or a judgment. Moreover, the dismissals came on the heels of numerous stays of all proceedings. In that procedural posture, these appellants have not had the opportunity to develop facts relative to futility and ripeness. Thus, this court remands to permit development of the requisite facts.

**III.**

This court reviews Court of Federal Claims' decisions *de novo* for errors of law, and for clear error on findings of fact. Yancey v. United States, 915 F.2d 1534, 1537 (Fed. Cir. 1990). This court also reviews the legal determination of a dismissal of a case for lack of subject matter jurisdiction without deference. Venture Coal Sales Co. v. United States, 370 F.3d 1102, 1104 (Fed. Cir. 2004); Shelden v. United States, 7 F.3d

1022, 1026 (Fed. Cir. 1993).  In addition, this court reviews *de novo* whether the Court of Federal Claims properly dismissed a complaint for failure to state a claim. Boise Cascade Corp. v. United States, 296 F.3d 1339, 1343 (Fed. Cir. 2002) (citing Dehne v. United States, 970 F.2d 890, 892 (Fed. Cir. 1992)). "[I]n reviewing a dismissal for failure to state a claim, we must assume all well-pled factual allegations are true and indulge in all reasonable inferences in favor of the nonmovant."  Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991).

The trial court may dismiss *sua sponte* under Rule 12(b)(6), provided that the pleadings sufficiently evince a basis for that action.  R. Ct. Fed. Cl. 12(b)(6); R. Ct. Fed. Cl. 12(h); cf. Myers v. Polk Miller Prods., Inc., 201 F.2d 373, 376 (C.C.P.A. 1953).  In that case, this court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Boyle v. United States, 200 F.3d 1369, 1372 (Fed. Cir. 2000).  This court may affirm the dismissal of a complaint if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.  Hishon v. King & Spalding, 467 U.S. 69, 73, 104 (1984); Conley, 355 U.S. at 45-46.

Because these cases are before this Court after a *sua sponte* dismissal, this court must review *de novo* if, as pled, there is any relief that could be granted under any set of facts that could be proven consistent with appellants' allegations.  If no relief could be granted, then the dismissal was proper.  However, if there is any relief that could be granted, as pled, this court must reverse the dismissal and remand the cases for development of facts.

**IV.**

The Takings Clause of the Fifth Amendment prohibits the federal Government from taking private property for public use without just compensation. U.S. Const. amend. V. A "regulatory taking" may occur when Government action, although not encroaching upon or occupying private property, "goes too far" and still amounts to a taking. Palazzolo v. Rhode Island, 533 U.S. 606, 617 (2001) (citing Pa. Coal Co. v. Mahon, 260 U.S. 393, 415 (1922)).

A claim for an uncompensated regulatory taking, however, must be ripe, meaning that it is the result of a "final decision" by the allegedly offending agency. Palazzolo, 533 U.S. at 618. This ripeness or finality rule ensures that the courts can properly assess the scope or existence of a taking. Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1015 (1992); Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 124 (1978). Ordinarily, a court cannot assess a taking claim without facts about "the extent of permitted development" or "restriction" on the land in question. Palazzolo, 533 U.S. at 621 (citing Suitum v. Tahoe Reg'l Planning Agency, 520 U.S. 725, 736, n.10 (1997)); MacDonald, Sommer & Frates v. Yolo County, 477 U.S. 340, 351 (1986).

However, the Supreme Court has specifically excused a failure to show finality in the face of "administrative futility." Palazzolo, 533 U.S. at 620 (citing Suitum, 520 U.S. at 738) ("Once it becomes clear that the agency lacks the discretion to permit any development, or the permissible uses of the property are known to a reasonable degree of certainty, a takings claim is likely to have ripened."). A claimant can show its claim was ripe with sufficient evidence of the futility of further pursuit of a permit through the administrative process. MacDonald, 477 U.S. at 350 n.7; cf. United States v. Dickinson,

331 U.S. 745, 749 (1947). Though the ripeness doctrine imposes obligations on landowners because "[a] court cannot determine whether a regulation goes 'too far' unless it knows how far the regulation goes;" the ripeness doctrine does not require a landowner to submit applications for their own sake. Palazzolo, 533 U.S. at 622 (citing MacDonald, 477 U.S. at 348). Though a party is required to explore development opportunities on the land in question, this is true only if there is uncertainty as to the land's permitted use. Id., at 622.

Thus, a claimant need not obtain a final decision if the agency lacks any discretion to avoid the allegedly offending regulatory action, or if the record shows, with a reasonable degree of certainty, the remaining permissible uses of the property after the regulatory action because there can be no variance from the facial requirements of the applicable regulation. Id. at 620 (citing Suitum, 520 U.S. at 738). This amounts to the futility exception to the finality rule. In Greenbrier, this court concluded that the plaintiffs' claims were not ripe for review because they had not met the futility exception to the finality rule. 193 F.3d at 1359-60.

As noted, Greenbrier's rejection of the futility exception's applicability does not govern this case because the Greenbrier plaintiffs had fully developed the facts of their cases and still failed to show futility. Indeed, in Greenbrier, the record showed that HUD had granted some applications for prepayment and that the plaintiffs did not follow HUD procedures for obtaining permission to prepay their mortgage loans. Id. at 1359.

Unlike the plaintiffs in Greenbrier, appellants have pled that they have applied for relief under the LIHPRHA, but that HUD has so severely delayed in meeting its requisite deadlines under the statute, that they have, as a result, missed their statutory deadlines.

The appellants have pled specific facts, like the plaintiffs in <u>Cienega Gardens,</u> showing their attempts to obtain relief under the statute. As discussed in <u>Cienega II</u>, where no final agency decision had been made notifying the petitioner in <u>Suitum</u> "as to the amount of development . . . that may be allowed by the agency," it was, nevertheless, undisputed that the agency had finally determined that petitioner's land was ineligible for development. <u>Cienega II</u>, 265 F.3d at 1245-47 (citing <u>Suitum</u>, 520 U.S. at 739). As applied to Suitum, in the Supreme Court's <u>Suitum</u> opinion, it was clear the agency did not dispute that she would not be allowed to develop her land, and thus, that she met the futility exception to the finality rule. 520 U.S. at 739. Because appellants have begun the application process, but have run into delays or are missing information on the value of their project because of HUD's delays or refusals to provide the requisite appraisals and PCNAs, their claims, if proven, may also fall into the administrative futility category and be ripe without a final decision.

Moreover this court has no record that the appellants have admitted that their cases "were factually indistinguishable from the owners in <u>Greenbrier</u>." Rather appellants have stated ambiguously that they were "unable to identify facts that would distinguish their cases from the *holding* in <u>Greenbrier</u>," and they made this statement without the benefit of this court's holding in <u>Cienega II</u>. Subsequent to appellants' statement regarding <u>Greenbrier</u>, this court issued its <u>Cienega II</u> holding. The appellants' pertinent facts, which were absent in <u>Greenbrier</u>, but are present in <u>Cienega Gardens</u>, were directly addressed in the <u>Cienega II</u> and <u>Cienega III</u> decisions.

Consequently, this case is unlike <u>Greenbrier</u>, where the Court of Federal Claims had granted the Government's motion for summary judgment on the basis of facts that

had been developed and placed before the court revealing a lack of "futility." Greenbrier, 193 F.3d at 1351. The current appeal falls under Cienega II—specifically under the subset of appellants who did not have the opportunity to develop a factual record. In Cienega II, this court stated: "If the factual circumstances of any or all of the remaining Owners present a similarly compelling case of administrative futility, then the trial court should adjudicate their takings claims, as well." 265 F.3d at 1248. In conclusion, this court reverses the Court of Federal Claims' dismissal of appellants' complaints and remands for the development of facts on whether appellants' takings claims are ripe.

COSTS

Each party shall bear its own costs.

REVERSED and REMANDED.