NOTICE
Decision filed 04/21/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 180582-U

NO. 5-18-0582

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| NEXT ENERGY, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Wayne County. |
| | ) | |
| v. | ) | No. 15-L-13 |
| | ) | |
| THE DEPARTMENT OF | ) | |
| NATURAL RESOURCES, | ) | Honorable |
| | ) | Kimbara G. Harrell, |
| Respondent-Appellee. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE WELCH delivered the judgment of the court.
Justices Moore and Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's decision to grant the Illinois Department of Natural Resources' motion for judgment on the pleadings is affirmed where Next Energy, LLC, failed to apply for a permit to conduct high-volume, horizontal hydraulic fracturing on its oil and gas leases in Wayne County, Illinois and, thus, its regulatory takings claim was not ripe for adjudication.

¶ 2    This action commenced when the petitioner, Next Energy, LLC, filed a complaint against the respondent, the Illinois Department of Natural Resources (Department), alleging that the Department's regulations on high-volume, horizontal hydraulic fracturing amounted to a regulatory taking of certain oil and gas leases owned by Next Energy. Thereafter, the Department filed a motion for judgment on the pleadings pursuant to section

1

2-615(e) of the Code of Civil Procedure (Code) (735 ILCS 5/2-615(e) (West 2016)), arguing, *inter alia*, that the complaint should be dismissed because it alleged a regulatory takings claim that was not ripe for adjudication. On December 3, 2018, the circuit court of Wayne County dismissed Next Energy's complaint, finding that the regulatory takings claim was not ripe because Next Energy had failed to apply for a fracturing permit from the Department and that it had failed to plead facts to demonstrate that seeking a permit would have been futile. For the following reasons, we affirm the decision of the trial court.

¶ 3                                 I. BACKGROUND

¶ 4     Next Energy is a limited liability company registered in Wyoming and authorized to do business in Illinois. Between 2009 and 2012, Next Energy acquired five-year oil and gas leases in Wayne County, Illinois, for the purpose of extracting oil from the leaseholds through horizontal drilling and high-volume fracturing in accordance with the then-existing laws. There was no other feasible basis for the extraction of oil from these leases.

¶ 5                     A. The Fracturing Permit Process Under the
                    Hydraulic Fracturing Act and the Adopted Regulations

¶ 6     In mid-2013, after Next Energy acquired the oil leaseholds, the Illinois General Assembly enacted the Hydraulic Fracturing Regulatory Act (Act). Pub. Act 98-22 (eff. June 17, 2013) (codified at 225 ILCS 732/1-1 *et seq.* (West 2014)). The Act prohibits the use of high-volume, horizontal hydraulic fracturing without first obtaining a permit from the Department, imposes substantive rules for construction and operation of wells, and sets standards for the fracturing process itself. 225 ILCS 732/1-30, 1-70, 1-75 (West 2014).

2

¶ 7    Because this case deals with the permit process, we will discuss in detail the procedures set for obtaining a fracturing permit. Section 1-35(a)(3) of the Act requires every applicant to register with the Department and submit proof of insurance of at least $5 million to cover injuries, damages, or loss related to pollution. *Id.* § 1-35(a)(3). In its permit application, the applicant must submit detailed descriptions of the proposed well and fracturing operations; disclose the proposed location for the well site; disclose water sources, chemicals, and proppants to be used; and provide plans for casing and cementing, flowback storage and disposal, containment practices and well-site safety, and traffic management for nearby roads. *Id.* § 1-35(b). The Act allows the Department to require an applicant to submit other "relevant information." *Id.* § 1-35(b)(20). The Act also requires the applicant to pay a $13,500 nonrefundable permit application fee. *Id.* § 1-35(e).

¶ 8    A 30-day public comment period must begin 7 calendar days after the Department receives a permit application. *Id.* § 1-45(a). Within that 30 days, any person may file written comments to the Department concerning any portion of the permit application and any issue relating to the applicant's compliance with the requirements of the Act and any other applicable laws. *Id.* § 1-45(c). The Department may ask the applicant to respond to the substantive public comments. *Id.* § 1-45(d). Any person having an interest that is or may be adversely affected by the proposed fracturing may file written objections to the permit and request a public hearing during the comment period. *Id.* § 1-50(a).

¶ 9    The Department then has 60 days from receipt of the permit application to approve, with any conditions that it deems necessary, or reject the permit application unless the deadline is waived by the applicant. *Id.* § 1-35(i). During the review period, if the

3

Department determines that the permit application is incomplete, does not meet the statutory requirements, or requires additional information, the Department shall allow the applicant to correct the deficiencies and provide the Department with any information requested to complete the application. *Id.* § 1-35(j). The Department may reject the application if the applicant fails to provide adequate supplemental information within the review period. *Id.* The Department may approve an application only if it meets the statutory requirements set forth in the Act. *Id.* § 1-53(a). The Department's decision to approve or deny a permit is considered a final administrative decision subject to judicial review under the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2014)). 225 ILCS 732/1-53(d) (West 2014). If the Department issues a permit, the permittee must comply with all provisions of the Act and all other local, state, and federal rules and regulations, and all statutorily required plans must be conditions contained in the permit. *Id.* § 1-55(a). The Department has discretion to impose other permit conditions that it deems necessary. *Id.* § 1-53(a).

¶ 10 The Act permits the Department to adopt rules as necessary to accomplish the purposes of the Act. *Id.* § 1-130. Pursuant to this authority, the Department adopted regulations related to the issuance of permits in November 2014. 38 Ill. Reg. 22052 (eff. Nov. 14, 2014). The rules reiterate the Act's requirements pertaining to permit applications, registration, standards for issuing a permit, and deadlines for public notices, comment periods, hearings, and the Department's permit decision. 62 Ill. Adm. Code 245.120, 245.200, 245.210, 245.250, 245.260, 245.270, 245.300 (2014). When determining whether to grant a permit, the Department considers the complete application,

4

all written public comments, any hearing information, and the applicant's response to public comments. *Id.* § 245.300(b).

¶ 11 The Department will issue the permit only if the applicant has satisfied nine regulatory requirements, including, the proposed well-site locations meeting the specific statutory requirements, the plans submitted with the application being "adequate and effective" to comply with the Act and the administrative rules, and the fracturing operations being conducted in a manner that protects the public health, public safety, property, wildlife, aquatic life, and environment and prevents pollution or diminution of any water source. *Id.* § 245.300(c). The applicant is also required to produce a water-use self-certificate, which explains the applicant's compliance with the Water Use Act (525 ILCS 45/0.01 *et seq.* (West 2014)) and applicable regional water supply plans, and provide proof of delivery of the plan to the local Soil and Water Conservation District and any community water supply within 20 miles of the proposed water source. *Id.* § 245.210(a)(9).

¶ 12 Like the Act, each permit requires the permit holder to comply with the Act and the administrative rules, and the permit application, plans, maps, and diagrams submitted with the application are incorporated into the permit as conditions. *Id.* § 245.320(a), (b). The rules allow the Department to impose additional conditions that, based on the review of the permit application, it deems necessary to promote the goals of the Act and its rules. *Id.* § 245.320(c). Once the permit is issued, the rules require a permit holder to seek modification of the permit where the holder wishes to take actions that "materially deviate from the original permit." *Id.* § 245.330(a). Any permit modification application for a

5

significant deviation shall be accompanied by a nonrefundable fee of $13,500 and will be reviewed and approved or rejected as if it is a new permit application. *Id.* § 245.330(c).

¶ 13                                    B. Next Energy's Complaint

¶ 14    On November 9, 2015, Next Energy filed a one-count complaint against the Department, alleging that the Department's regulations on high-volume, horizontal hydraulic fracturing amounted to a regulatory taking of its oil and gas leases in Wayne County. Specifically, the complaint made the following allegations. Sometime in mid-2012, after Next Energy acquired the leases, the Department imposed a "moratorium" on the issuance of fracturing permits for an indefinite period of time, and no applications for horizontal drilling and high-pressure hydraulic fracturing were processed under the then-existing laws. Thereafter, although Public Act 98-22 was enacted and had an effective date of June 17, 2013, the Department failed to adopt regulations related to the issuance of permits until November 2014, which made it impossible for leaseholders to seek fracturing permits because it was "well known in the industry" that any application would not be reviewed or approved.

¶ 15    The Department then resumed accepting applications in November 2014, after the rules were promulgated, but the provisions of the Act and the accompanying regulations were so "odious, ill-defined and burdensome as to render application for such a permit economically futile and impractical." The complaint identified the following reasons for why the permit application process was economically futile and impractical: (1) the high cost of the application permit, which was "unrelated to any legitimate purpose related to the application process especially in light of its non-refundable nature and the ability of the

6

Department to deny said pre-applications for non-descript reasons"; (2) the requirement that the applicant obtain insurance of at least $5 million before applying for a permit; (3) the requirement that an applicant must obtain a separate permit for each well stimulated by horizontal fracturing; (4) there was no definable, objective criteria that must be met for the granting of a permit; (5) there were no regulations adopted that established rules and procedures to determine when a public hearing may be granted; (6) there was no criteria established as to what data presented at the public hearing or in a public comment was sufficient to defeat the applicant's submission to obtain a permit; (7) because there was no objective criteria for the issuance of a permit established, it was impossible to determine the relevance of a public hearing or the nature of the material that could be presented at a public hearing for the purpose of defeating the permit; (8) there was no discernable criteria established as to what adversely-affected interest a person must have to justify the filing of a written objection; (9) there was a presumption of pollution in the area of a well regardless of causation, which could only be rebutted by clear and convincing evidence, and this burden was "onerous and impossible to meet"; (10) that the applicant was required to waive the 60-day period for public comment or forfeit the permit fee with permit denial; (11) that the Department was permitted to include additional conditions on the permit that it deemed necessary without any guidelines; (12) that 62 Ill. Adm. Code 245.110 (2014) vastly expanded the definition of base fluid[1] beyond that contemplated by section 1-5 of the Act

_____

[1]Section 1-5 of the Act defined base fluid as "the continuous phase fluid type, including, but not limited to, water used in high volume horizontal hydraulic fracturing operation." 225 ILCS 732/1-5 (West 2014).

(225 ILCS 732/1-5 (West 2014)); (13) that 62 Ill. Adm. Code 245.210(a)(9) (2014) converted the certification requirement by the Act into a notification with proof of delivery to every Soil and Water Conservation District and any community water supply within 20 miles of the proposed water source with the purpose of attracting the largest number of people possible to incite rebuttal to prevent fracturing operations; and (14) that 62 Ill. Adm. Code 245.210(d) (2014) required insurance that was neither referred to nor authorized by the Act.

¶ 16   The complaint asserted that, because the permit application process was economically futile and impractical, the Department had effectively committed a regulatory taking of Next Energy's oil and gas leasehold interests without compensating Next Energy for the fair value of those leaseholds.  Next Energy requested that the trial court determine that a taking had occurred and to order the Department to institute eminent-domain proceedings for the purpose of determining just compensation.

¶ 17   On January 19, 2016, the Department filed a motion to dismiss pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2014)).  In the motion, the Department contended, *inter alia*, that Next Energy failed to plead facts showing a regulatory taking in that it alleged no facts in support of its assertion that the only economically viable use of the leases was extraction of oil through high-volume, horizonal hydraulic fracturing; the Department asserted that Next Energy pled "nothing to suggest that there [was] anything unique about its property that prohibit[ed] extraction of oil and gas by other means."  On November 21, 2016, the trial court denied the Department's section 2-615 motion to

8

dismiss, stating that it was not "prepared to say there [are] no set of facts in support of the allegations of the Complaint that would entitle [Next Energy] to relief."

¶ 18    On August 1, 2018, the Department filed a motion for judgment on the pleadings pursuant to section 2-615(e) of the Code (*id*. § 2-615(e)), arguing that Next Energy's takings claim was not ripe for adjudication.  Specifically, the Department contended that Next Energy had failed to plead that it had applied for the permit to conduct horizontal fracturing on its Wayne County wells, that Next Energy had also failed to plead that it had reached out or sought information from the Department concerning the process of applying for a drilling permit, and that Next Energy had failed to plead sufficient facts to demonstrate that pursuing a final decision would have been futile.

¶ 19    On September 13, 2018, Next Energy filed a response to the Department's motion for judgment on the pleadings, contending that two exceptions to the ripeness doctrine applied: futility and unfair/repetitive procedures.  Next Energy contended that applying for a fracturing permit would have been futile because, prior to the enactment of the current statute and the regulations, there had been a moratorium on horizontal fracturing permits as the Department would not consider any permit applications under the former law; that, between the effective date of the Act and the enactment of the regulations, there was no process in place to apply for a horizontal drilling permit; and that the regulations that were enacted regarding the permit application process were so "onerous, ambiguous, and ill-defined that it was not, in any practical sense, possible to comply."

¶ 20    In support of its futility argument, Next Energy attached portions of an application that was submitted by a nonparty applicant, Woolsey Operating Company, LLC (Woolsey

9

or Woolsey application), which was the only application submitted to the Department for a horizontal drilling and fracturing permit at that time.[2] The attached documents indicated that Woolsey obtained the required insurance to register as a potential applicant for a permit on August 1, 2015 (expiring August 1, 2016); that it submitted its first registration to apply for a permit thereafter; that it submitted another registration on February 2, 2016; and that the registration was approved on February 23, 2016, which meant that Woolsey was permitted to submit a permit application. On August 1, 2016, Woolsey renewed its liability insurance as required to continue with the application process. On May 22, 2017, Woolsey submitted its initial application for a permit to drill one well in White County along with the required supporting documentation. On May 26, 2017, the Department notified Woolsey that the public comment period would begin on May 29, 2017, and would end on June 27, 2017. On June 5, 2017, the Department notified Woolsey that its permit application was deficient and identified 10 areas in which the Department required additional information or documents, or the application could be rejected. Subsequently, Woolsey submitted a supplemental application addressing the listed deficiencies. The public comment period was extended as a result of this supplemental application, a public hearing was held on August 2, 2017, and a second public comment period began on August 4, 2017. The Department received various written comments about the proposed permit, which noted deficiencies in the Woolsey application as well as stated concerns about the

---

[2]Next Energy contended that the Woolsey application was a matter of public record and, as such, the trial court could take judicial notice of it. See *Muller v. Zollar*, 267 Ill. App. 3d 339, 341 (1994) (judicial notice is proper where the document is part of the public record).

environmental effects of fracturing; one such written comment was from the Natural Resources Defense Council, an environmental action group with offices in New York, Washington D.C., Chicago, and Beijing.

¶ 21 On August 14, 2017, the Department required Woolsey to respond to the issues raised in the public comment period and to provide additional documentation. Woolsey submitted its second supplemental application on or about August 25, 2017. Woolsey was also required to submit a third supplemental application on or about August 31, 2017, with additional documentation. On August 31, 2017, the Department notified Woolsey that its application for a permit had been granted. The permit contained 86 conditions that must be met for Woolsey to utilize its permit. However, on October 30, 2017, Woolsey requested that the Department release its permit and withdraw its pending permit application. In the letter, Woolsey did not specifically state a reason for withdrawing its application but acknowledged that, if in the future, it determined that it was economical to pursue the project contemplated by the permit, it would be required to begin the permit process in accordance with the applicable statutes and regulations in effect at that time. In response, the Department, by letter dated November 1, 2017, released Woolsey's permit, noting that the fees paid were nonrefundable and, if Woolsey chose to reapply, there would be no credit for already-paid fees.

¶ 22 Relying on Woolsey's experience, Next Energy contended that the entire permit application process was futile, onerous, and financially impractical. Pointing to the financial costs associated with the application process and the lack of definable criteria in the Act and regulations, Next Energy contended that it would be futile for it to apply for a

11

permit because it would likely have the same experience as Woolsey. Next Energy argued that the Department had burdened Woolsey's property interest, the oil and gas leasehold, with unfair and onerous procedures, which were indicated by the 86 conditions attached to the permit, and that the procedures made it impossible for Woolsey to proceed with the extraction of the oil from the property. Next Energy pointed to the public comments received during Woolsey's public comment period and noted that, although the comments were received from organizations having no presence or interest in White County and from individuals who stated no interest or residence in White County, Woolsey was required to respond to those comments and submit additional documentation. Next Energy noted that the Woolsey application was the only application submitted to date.

¶ 23 A hearing on the motion for judgment on the pleadings was held on October 22, 2018. During the hearing, the Department argued that the fact that Woolsey successfully navigated the permit application process demonstrated that the regulations were not too onerous to comply with and that it was possible for Next Energy to be issued a drilling permit. The Department acknowledged that Woolsey voluntarily withdrew its permit but noted that its withdrawal letter did not, on its face, show the reason for the withdrawal; the Department contended that the letter did not show that Woolsey withdrew the permit because complying with the permit conditions would be too onerous.

¶ 24 In response, Next Energy argued that the only question at this stage in the proceedings was whether the pleadings raised a question of fact that must go to trial. Next Energy contended that, at a minimum, a question of fact existed as to whether the entire application process was futile, which was evidenced by Woolsey's experience with the

12

permit application process. After hearing the arguments, the trial court granted the Department's motion for judgment on the pleadings.

¶ 25 On December 3, 2018, the trial court entered a written order, which reiterated that it was granting the Department's motion for judgment on the pleadings. In the order, the court noted that, when ruling on a motion for judgment on the pleadings, it could only consider the well-pleaded facts alleged in the complaint and any attached exhibits. Examining the complaint, the court noted that it was left with the following allegations: that Next Energy acquired five-year oil and gas leases in Wayne County; that subsequent to obtaining the leases, the Department imposed a moratorium on the issuance of permits for horizontal drilling and high-pressure fracturing for an indefinite period of time; that Public Act 98-22, which addressed high-volume, horizontal hydraulic fracturing, had an effective date of June 17, 2013; and that the Department adopted regulations related to the issuance of permits for horizontal drilling and fracturing in November 2014. The court noted that Next Energy did not plead that it applied for a permit to drill in Wayne County (or anywhere else in Illinois) before or during the alleged moratorium, after the passage of Public Act 98-22, or after the adoption of the Department's regulations.

¶ 26 The trial court found that Next Energy had not pleaded sufficient facts to meet the high burden required to invoke the futility exception to the ripeness doctrine. The court found that Next Energy's allegation regarding a moratorium was not well pleaded because it never alleged that it applied for a permit and was denied. The court also concluded that Next Energy's futility argument, with regard to the Department's regulations, was "belied by its own submission of documents" showing that Woolsey applied for and received a

permit to conduct high-volume, horizontal hydraulic fracturing in Illinois. Thus, the court found, from the issuance of the Woolsey permit and its own review of the Department's regulations, that the regulations were not so onerous and overreaching to support Next Energy's invocation of the futility exception. Accordingly, the court dismissed Next Energy's complaint with prejudice because its claims were not ripe for adjudication. Next Energy appeals.

¶ 27                                    II. ANALYSIS

¶ 28                          A. Judgment on the Pleadings

¶ 29    This appeal comes before this court on the trial court's grant of a judgment on the pleadings in favor of the Department pursuant to section 2-615(e) of the Code (735 ILCS 5/2-615(e) (West 2016)). Any party may seasonably move for a judgment on the pleadings. *Id.* A motion for a judgment on the pleadings is similar to a motion for summary judgment, but it is limited to the pleadings. *Allstate Property & Casualty Insurance Co. v. Trujillo*, 2014 IL App (1st) 123419, ¶ 15. A judgment on the pleadings is proper only where the pleadings disclose that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Indian Harbor Insurance Co. v. City of Waukegan*, 2015 IL App (2d) 140293, ¶ 12. When ruling on a motion for judgment on the pleadings, the court will consider only those facts apparent from the face of the pleadings, matters subject to judicial notice, and judicial admissions in the record. *Id.* "A party moving for a section 2-615(e) judgment on the pleadings concedes the truth of the well-pleaded facts in the nonmovant's pleadings." *Allstate Property & Casualty Insurance Co.*, 2014 IL App (1st) 123419, ¶ 16. For purposes of resolving the motion, the court must take as true all

reasonable inferences from those facts but disregard any conclusory allegations and surplusage. *Id.* Our review of a section 2-615(e) ruling is *de novo. M.A.K. v. Rush-Presbyterian-St. Luke's Medical Center*, 198 Ill. 2d 249, 255 (2001).

¶ 30                    B. Takings Claims and the Ripeness Doctrine

¶ 31    The takings clause of the fifth amendment prohibits the government from taking private property for public use without just compensation. U.S. Const., amend. V. The takings clause is made applicable to the states through the fourteenth amendment. *Davis v. Brown*, 221 Ill. 2d 435, 443 (2006). The Illinois Constitution of 1970 provides that private property shall not be taken or damaged for public use without just compensation. Ill. Const. 1970, art. I, § 15. There are two types of takings: physical takings and regulatory takings. *Estate of Hage v. United States*, 687 F.3d 1281, 1286 (Fed. Cir. 2012). A physical taking generally occurs where there is a direct government appropriation or a physical invasion of private property. *Id.* A regulatory taking occurs where the government action does not encroach upon or occupy the private property, but it affects or limits the property's use to such an extent that a taking occurs. *Id.* "Although property may be regulated to a certain extent, a governmental regulation that goes too far will be considered as a taking." (Internal quotation marks omitted.) *LaSalle Bank National Ass'n v. City of Oakbrook Terrace*, 393 Ill. App. 3d 905, 911 (2009).

¶ 32    However, before a party may initiate an action alleging a regulatory taking, the claim must be ripe. *Id.* A regulatory takings claim is not ripe until the government entity charged with implementing the regulations has reached a final, definitive decision concerning the application of the regulations to the particular property at issue. *Id.* "This

ripeness or finality rule ensures that the courts can properly assess the scope or existence of a taking." *Anaheim Gardens v. United States*, 444 F.3d 1309, 1315 (Fed. Cir. 2006). A court cannot resolve a takings claim without facts about the extent of permitted development or the restriction on the land. *Id.*; *Palazzolo v. Rhode Island*, 533 U.S. 606, 620-21 (2001).

¶ 33 Next Energy acknowledges that it never applied for a fracturing permit for its Wayne County wells pursuant to the procedure set out in the Act. Thus, its takings claim would be considered unripe unless the final decision requirement was excused. There are two exceptions where the lack of a final decision may be excused: futility and unfair/repetitive procedures. *Sherman v. Town of Chester*, 752 F.3d 554, 561 (2d Cir. 2014). Although these are distinct concepts, the analyses for the two are the same. *Id.* "A claimant can show its claim was ripe with sufficient evidence of the futility of further pursuit of a permit through the administrative process." *Anaheim Gardens*, 444 F.3d at 1315; see also *Morris v. United States*, 392 F.3d 1372, 1376 (Fed. Cir. 2004) (a failure to obtain a final decision may be excused under the futility exception where an agency's decision makes clear that pursuing remaining administrative remedies would not result in a different outcome). Also, government authorities may not burden property by imposing repetitive or unfair land-use procedures to avoid a final decision. *Palazzolo*, 533 U.S. at 621. Although a court cannot determine whether a regulation goes too far unless it knows how far the regulation goes, the ripeness doctrine does not require a landowner to submit applications for their own sake. *Id.* at 622. The property owner bears the burden of

16

pleading facts to establish that pursuing a final decision would have been futile. *LaSalle Bank National Ass'n*, 393 Ill. App. 3d at 912.

¶ 34                     C. Relevant Cases Applying the Futility Exception

¶ 35    In *Palazzolo*, plaintiff owned waterfront property in Rhode Island, a large portion of which was salt marshland subject to tidal flooding. *Palazzolo*, 533 U.S. at 613. Plaintiff submitted multiple requests to develop the property, which would have required substantial fill to accommodate the building of significant structures. *Id.* at 613-14. However, the applications were rejected. *Id.* at 614. Years later, plaintiff submitted a new proposal to construct a wooden bulkhead and to fill the entire marshland area, but it was rejected because it did not comply with a state agency wetland regulation. *Id.* at 614-15. Subsequently, plaintiff submitted a plan for a private beach club, which was denied for the same reason. *Id.* at 615. Plaintiff then filed a complaint for inverse condemnation, asserting that the application of the governing regulations to his property constituted a taking without just compensation in violation of the fifth and fourteenth amendments. *Id.* The Rhode Island Supreme Court found that the claim was not ripe because there remained doubt regarding the extent of the development the state agency responsible for applying the regulations would allow. *Id.* at 616. On *certiorari*, the United States Supreme Court held that plaintiff was not required to submit further applications to develop the property because the agency's decisions made clear that the state regulations prevented plaintiff from engaging in any filling or development activity on the marshland. *Id.* at 621. Because no additional application was needed to clarify the extent of permitted development,

17

plaintiff had no further obligation to pursue his claim before the agency, and the issue was ripe for judicial review. *Id.* at 625-26.

¶ 36 Similarly, in *Sherman*, the Second Circuit Court of Appeals held that a developer's takings claim against the town was ripe even though the town zoning board had not yet reached an official decision on the developer's application for subdivision approval. *Sherman*, 752 F.3d at 561-63. For nearly a decade, the zoning board obstructed the developer's attempts to obtain subdivision approval by changing the zoning regulations. *Id.* at 557. Based on the town's decade of obstruction, the court concluded that a final decision would be futile because the town used, and would likely continue to use, repetitive and unfair procedures to avoid making a final decision. *Id.* at 563.

¶ 37 In contrast, in the Second District case of *LaSalle Bank National Ass'n*, the plaintiffs-landowners contended that, although it had never submitted a proposed development plan to the city, doing so was futile because correspondence between the municipal planner and a third party (the developer for the owner's property) demonstrated that officials had signaled their intent to strictly adhere to zoning rules unfavorable to the planned development. *LaSalle Bank National Ass'n*, 393 Ill. App. 3d at 912. The appellate court affirmed the dismissal of plaintiffs' complaint, finding that it was not ripe because plaintiffs had never sought approval for any development on the subject property. *Id.* at 914-15. In making this decision, the court distinguished *Palazzolo*, noting that *Palazzolo* held that a decision was final when the government entity charged with implementing the regulations in question, after rejecting development proposals, made clear that additional proposals would be denied. *Id.* As plaintiffs had not sought approval for any development

18

on the subject property, the court found that there was "no indication that the extent of development that would be allowed on the subject property was determined in a concrete way or that any development proposal would be automatically rejected." *Id.* at 914.

¶ 38                          D. Present Case

¶ 39    The Department contends that Next Energy has failed to sufficiently allege that its regulatory takings claim was ripe because it did not assert that it sought relief under the regulation, *i.e.*, applied for the fracturing permit under the procedures set forth in the Act and the regulations.  Because this is from an order dismissing Next Energy's complaint, the allegations in the complaint are considered true.  *Allstate Property & Casualty Insurance Co.*, 2014 IL App (1st) 123419, ¶ 16.  As for the allegations in a pleading, a pleader is only required to plead ultimate facts to be proved; the pleader is not required to set out the evidence.  *Casualty Insurance Co. v. Hill Mechanical Group*, 323 Ill. App. 3d 1028, 1034 (2001).

¶ 40    Next Energy made the following factual allegations in its complaint: (1) that it acquired five-year oil and gas leases for the specific purpose of developing the leaseholds through horizontal drilling and high-volume fracturing in accordance with the then-existing law; (2) that no other feasible basis existed for extraction of oil from those leaseholds; (3) that, after acquiring the leaseholds, the Department imposed a moratorium on the issuance of permits for fracturing for an indefinite period of time; (4) that the legislature passed Public Act 98-22, effective June 17, 2013, which set out the application procedures for the permit process; (5) that the Department did not adopt regulations related to the issuance of the permits until November 2014; (6) that it was impossible to apply for a

19

permit between June 2013 and November 2014 because it was well known that the applications would not be reviewed; and (7) that the statutory and regulatory provisions were so odious, ill-defined, and burdensome as to render application for the permit economically futile and impractical. Next Energy then identified the relevant provisions in the statute and regulations that it considered ambiguous and burdensome. The complaint also contended that the futility exception applied to excuse Next Energy's failure to seek a final decision for the above-stated reasons.

¶ 41 Relying on *LaSalle* and the federal cases analyzing the futility exception, we find that Next Energy has not alleged sufficient facts to support its claim of futility. Absent from Next Energy's complaint are any factual allegations showing that it sought a fracturing permit under the Act and the adopted regulations in the approximately three years that were remaining on its oil and gas leases (Next Energy obtained five-year leases in mid-2012, and the Department adopted the regulations in late 2014). By failing to follow the procedures created by the Department, Next Energy has denied the Department an opportunity to apply the regulations to determine whether to issue a fracturing permit and, if so, under what conditions the permit should be issued. Unlike the futility cases cited by Next Energy, the present case does not involve a situation in which a regulatory agency, after rejecting submitted permit applications, makes it clear that additional applications would be denied. Like the *LaSalle* plaintiff, Next Energy has not applied for a fracturing permit under the Act and new regulations; Next Energy has not even contacted the Department to inquire about its likelihood of success in obtaining such a permit. Thus, the impact of the regulations on Next Energy's oil and gas leases is not reasonably certain.

¶ 42    In asking us to apply the futility exception here, Next Energy asks us to hold that a plaintiff can show futility without ever trying to seek a permit from the regulatory agency or without a history of engaging with that agency regarding the regulations at issue. Next Energy wants us to hold that a plaintiff can demonstrate futility just by showing a nonparty applicant's experience in seeking a permit. This is contrary to case law. The cases applying the futility exception have not eliminated the requirement that the party claiming a regulatory taking must follow reasonable and necessary steps to allow the regulatory agency to exercise its discretion. See *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1232 (9th Cir. 1994) (the futility exception does not alter a party's obligation to file at least one meaningful development proposal); *Freeman v. United States*, 875 F.3d 623, 628 (Fed. Cir. 2017) (the private party must follow reasonable and necessary steps to allow the regulatory agency to exercise its full discretion). Because Next Energy has made no such attempt to obtain a fracturing permit, it is impossible for the trial court to determine the full extent to which the Department's fracturing rules would have burdened Next Energy's lease or whether its permit application would have been automatically rejected. Although Next Energy uses a nonparty's experience with the fracturing permit process to support its claim of futility, we note that the nonparty's experience in seeking a permit would not necessarily be Next Energy's experience. Further, we find that the nonparty's experience cannot be characterized as futile when that applicant actually received a permit, albeit with conditions.

¶ 43    Moreover, we find unpersuasive Next Energy's argument that the high cost of applying for the permit demonstrates the economic futility of complying with the

21

regulations. We recognize that a nonrefundable fee of $13,500 and other potential nonrefundable fees for amending the permit may be burdensome. However, at this point, we do not know how much it would cost Next Energy to obtain a fracturing permit, and we cannot know until the Department has had some meaningful opportunity to exercise its discretion. Thus, we find that the trial court did not err in granting the Department's motion for judgment on the pleadings.

¶ 44                         III. CONCLUSION

¶ 45    For the foregoing reasons, we affirm the trial court's dismissal of Next Energy's complaint.

¶ 46    Affirmed.