2022 IL App (1st) 211042-U
No. 1-21-1042
Order filed March 7, 2022

First Division

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except for the limited circumstances allowed under Rule 23(e)(1)

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* THE PARENTAGE OF Z.T., | ) | Appeal from the |
| | ) | Circuit Court of |
| (KENNETH THOMAS, | ) | Cook County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | No. 16 D 79067 |
| v. | ) | |
| | ) | Honorable |
| JASMINE ESCOBEDO, | ) | Abbey Fishman Romanek, |
| | ) | Judge, presiding. |
| Respondent-Appellant). | ) | |

_____

PRESIDING JUSTICE HYMAN delivered the judgment of the court.
Justices Pucinski and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*: Appeal dismissed where issue raised in appellant's brief was not considered by the trial court.

¶ 2    Jasmine Escobedo and Kenneth Thomas are the parents of 12-year-old Z.T. In June 2020, Escobedo filed a motion to permanently relocate with Z.T. from Chicago to Dallas, Texas, where her boyfriend lived. While that motion was pending, Escobedo was diagnosed with cancer. As a result, she filed an emergency motion to temporarily relocate with Z.T. to Dallas, to undergo

treatment there and be near family and friends. The trial court denied Escobedo's emergency motion but allowed her to exercise her parenting time in Texas.

¶ 3    Escobedo moved to Dallas in Spring 2021. Z.T. traveled between Chicago and Dallas to spend time with each parent. Under the terms of the parties' custody agreement, Z.T. spent most of her time with Escobedo in Texas.

¶ 4    As the 2021 school year approached, the parties had to select a new school for Z.T. Due to the Coronavirus pandemic, Z.T. attended school remotely but would now be attending in person. Thomas wanted to enroll Z.T. in the University of Chicago Laboratory School, while Escobedo preferred Irma Lerma Rangel Young Women's Leadership School in Dallas. (There is no dispute that both schools are of equally high caliber.) After a hearing, at which both parties and the guardian *ad litem* testified, the trial court ordered that Z.T. enroll in the Lab School for Fall 2021. Escobedo was granted leave to immediately appeal the order under Supreme Court Rule 306(a)(5) (eff. Oct. 1, 2020).

¶ 5    Escobedo argues the trial court's order denied her leave to temporarily relocate Z.T. to Texas. Further, the decision was not supported by the factors outlined in section 609.2 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/609.2 (West 2020)), which apply to determine whether relocation is in a child's best interest.

¶ 6    We hold that the sole issue before the trial court was which school Z.T. should attend. While Escobedo's preferred choice necessarily required Z.T. to live in Texas, the trial court did not make a finding on relocation, temporary or permanent, and did not assess whether relocation to be in Z.T.'s best interests under section 609.2 of the IMDMA. As such, we lack jurisdiction to address the relocation issue.

¶ 7 Moreover, Escobedo fails to argue that the trial court erred in ordering Thomas to enroll Z.T. in the Lab School and has forfeited that issue under Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020). So, we dismiss the appeal.

¶ 8                                      Background

¶ 9 Escobedo and Thomas dated but were never married. They have a daughter, Z.T., born in February 2010. Under the terms of a November 2017 judgment allocating parental responsibilities, the parties had joint decision-making with respect to Z.T. Escobedo became the custodial parent, with the majority of parenting time. Thomas was granted parenting time every other weekend from Friday until Monday and every Wednesday night to Thursday morning. Thomas also had to pay $186.11 bi-weekly in child support.

¶ 10 On June 25, 2020, Escobedo filed a motion to permanently relocate to Dallas, Texas, on August 1, 2020. Her motion alleged Thomas did not regularly exercise his parenting time and primarily saw Z.T. every other Saturday afternoon to Sunday afternoon. Escobedo also alleged Thomas stopped paying child support in November 2019 and was in arrears by nearly $6,000, making her Z.T.'s sole financial provider. Escobedo said she could no longer afford to live in her apartment in Chicago, and she would need to move to a new school district. Further, her employer, Guaranteed Rate, offered her a transfer to Dallas, which she accepted. Escobedo's boyfriend recently had accepted a job in Dallas, and she and Z.T would be moving in with him.

¶ 11 Escobedo's motion argued that under section 602.9 of the IMDMA (750 ILCS 5/602.9 (West 2020), permanently relocating to Texas and modifying the parenting plan was in Z.T.'s best interests, largely because of the lower cost of living in Texas and a two-income household would give her more financial stability. She further alleged that Z.T.'s school in Dallas was demonstrably

superior to the school Z.T. was attending in Chicago and the school in Thomas's home district. Finally, her motion proposed a new parenting schedule that she asserted would allow Thomas to exercise more parenting time than he presently had.

¶ 12    On Escobedo's motion, the trial court reappointed Erin Masters as guardian *ad litem* to represent Z.T.'s interests and also appointed Joanne Smith under section 604.10(b) of the IMDMA (750 ILCS 5.604.10(b) (West 2020), to evaluate whether relocating was in Z.T.'s best interests.

¶ 13    In response to Escobedo's motion, Thomas denied that he failed to exercise his parenting time, providing a list of the dates he was with Z.T., as well as child-related events he attended. Thomas argued that a "non-relocating parent's child support obligation/financial matters" are not relevant to relocation and asserted he has an "exceptional relationship" with Z.T. and spends half his time with her. Thomas argued that Z.T.'s best interests were to be her father and asked the trial court to deny the motion.

¶ 14    In December 2020, with the motion to relocate pending, Escobedo was diagnosed with stage IV breast cancer. Escobedo decided she wanted to undergo treatment in Texas rather than Chicago, and on January 19, 2021, she filed an emergency motion asking to temporarily relocate with Z.T to Texas until further order. Escobedo attached to her emergency motion a 30-page evaluation from JoAnne Smith recommending:

> "the court consider that if Jasmine relocates to the Dallas, Texas area for her treatment and to be with her paramour that [Z.T.] be with her while she is able to help her with her school work and spend quality time with her until which time, she feels the focus needs to be just on herself and her treatment. [Z.T.] can do e-learning. The court should also consider [Z.T.] having time with her father, and he stated he could go down to Texas and stay at an

Air B&B or hotel and spend quality time with [Z.T.]. Then during Spring Break [Z.T.] could be with her father in Chicago. Then an assessment could be made regarding [Z.T.'s] best interest through the summer 2021 and where she should attend school in the fall 2021 with input from both parents and [Z.T.'s] therapist. It is this evaluator's professional opinion that the more consistent and predictable the plan is for [Z.T.],. the better it will be for her."

¶ 15     On January 27, 2021, the trial court entered an order, finding, in part, that Escobedo's motion was not an emergency and continuing it for a hearing. After the hearing, for which there is no transcript, the trial court entered an order denying Escobedo's emergency motion for temporary relocation and setting her motion for permanent relocation for a hearing from June 1 to June 3, 2021. (The trial court later moved the hearing to September 2021, but those dates were also stricken, and this court has no knowledge that the hearing has occurred.)

¶ 16     As the Fall 2021 school year approached, the parties could not agree on where Z.T. should attend school. Thomas wanted Z.T. to enroll at the Lab School, while Escobedo wanted to enroll her at Irma Rangel school in Dallas. On August 5, 2021, the trial court held a hearing "regarding enrollment of the minor child in school, temporarily, for the year Fall 2021-Spring 2022." Before hearing from the parties, the attorneys made their arguments and agreed that the hearing was about which school Z.T. would attend that Fall. Escobedo's attorney said she thought it was "disingenuous to say that Your Honor doesn't have the ability have the hearing today" on Z.T.'s temporary relocation to Texas but acknowledged that "we're set for a hearing on the school issue today."

¶ 17    At the hearing, Thomas testified he has lived with his mother in her home in Chicago since 2018. He recently obtained a master's degree from DePaul University and was looking for a job but presently unemployed. The Lab School advised him that financial aid and a scholarship would cover the full cost of Z.T.'s tuition, about $36,000, but that the school would only hold the spot for her until the end of the day. If Z.T. did not accept, she would need to reapply and repeat the entrance exam. Thomas said the Lab School would not rescind the financial aid once he obtains employment, but he acknowledged that the amount of aid depended on his annual salary and that he would pay the difference.

¶ 18    Thomas said the Lab School is about a five-minute walk from his house, and he could walk Z.T. to and from there. When he obtains full-time employment, Thomas's mother could drop Z.T. off, and he could pick her up, or nearby family and friends could help out, if necessary. Thomas acknowledged that he took Z.T.'s cell phone as a punishment for a day, which had prevented her from talking to her mother but if Z.T. enrolled at the Lab School, he would facilitate a positive and strong relationship between mother and daughter.

¶ 19    Escobedo testified that she had been living in an apartment in Dallas, Texas, with her boyfriend since April or May 2021. She was on medical leave from work while undergoing cancer treatment. Escobedo had been exercising her parenting time with Z.T. in Texas, and because school was remote, Z.T. could attend from there. She testified that she helps Z.T. with her homework and that when Z.T. is with Thomas, she provides help over the phone.

¶ 20    Escobedo said Irma Rangel is about three miles from her apartment. The school does not charge tuition and only requires a $100 enrollment fee. Z.T. attended orientation at the school, made some new friends, and picked classes for the Fall 2021 semester. Although Escobedo was

unable to drive while undergoing chemotherapy, she could walk Z.T. to a nearby bus stop. In an emergency, she would call her mother, her boyfriend, a nearby friend or Uber.

¶ 21    Erin Masters, the GAL, testified that Z.T. told her she preferred to attend school in Texas. Z.T. enjoyed the orientation she attended, made some friends, and was interested in the classes they offered. She also generally wanted to be in Texas with her mother. Masters said Z.T. has a close relationship with her mother. She said Z.T. has a "decent relationship" with her father but did not think Z.T. would "be comfortable if she were living with her dad throughout the school year *** because I think she struggles a lot with the relationship with her grandmother, who lives at her dad's house." Masters said Z.T. and her grandmother "butt heads" and "there is a struggle with that relationship." According to Masters, Z.T. has a decent relationship with her mother's boyfriend, with whom she stays when she visits, and Z.T. has only spoken positively about him.

¶ 22    Masters recommended Z.T. be enrolled in the Irma Rangel school "at least *** for the first semester until the Court can adjudicate the relocation issue." Masters said she based her recommendation on the school's ranking, which is high, and its focus on STEM because Z.T. enjoys science. She said the Lab School is good too; however, she had concerns about Thomas's ability to facilitate the relationship between Z.T. and Escobedo if she went to school there. She also had concerns about Thomas's ability to pay for the Lab School in the future. She said, "I think she would thrive at either school, and I think they're both academically sound schools. I think that for the first semester until we can adjudicate the relocation issue, she would be best served at Irma Rangel."

¶ 23    After the hearing, the trial court entered an order, stating Thomas "shall enroll the minor child in the University of Chicago Laboratory School immediately for Fall 2021and the minor

child shall continue to be enrolled until further order of Court. In the event that there is a tuition cost associated with the University of Chicago Laboratory School, [Thomas] shall be solely (100%) responsible for the same." Further, the order stated, Z.T.'s "enrollment at University of Chicago Laboratory School for Fall 2021 is without prejudice subject to a full adjudication of permanent relocation and/or any hearings on future school enrollment. For purposes of permanent relocation, University of Chicago Laboratory School shall not be considered the 'status quo' school."

¶ 24    Escobedo filed a petition seeking an immediate interlocutory appeal under Supreme Court Rule 306(a)(5) (eff. Oct. 1, 2020). After Thomas filed a response in opposition to the petition for leave of appeal, the appellate court granted Escobedo's petition.

¶ 25    Escobedo seeks a ruling on whether the trial court's order requiring Z.T. to attend school at Chicago Lab was against the manifest weight of the evidence under the section 609.2 factors.

¶ 26                                    Analysis

¶ 27                                   Jurisdiction

¶ 28    Jurisdiction is a threshold issue that can be raised at any time. *Geise v. Phoenix Co. of Chicago, Inc.*, 159 Ill. 2d 507, 515 (1994). This court has an independent duty to consider its jurisdiction and dismiss an appeal on which we lack jurisdiction. *Palmolive Tower Condominiums, LLC v. Simon*, 409 Ill. App. 3d 539, 542 (2011). The appellant bears the burden of establishing jurisdiction. *U.S. Bank National Ass'n v. In Retail Fund Algonquin Commons*, LLC, 2013 IL App (2d) 130213, ¶ 24 (citing Ill. S. Ct. R. 341(h)(4) (eff. Oct 1, 2020)).

¶ 29    Escobedo contends this court has jurisdiction under Supreme Court Rule 306(a)(5), which, in part, permits a party to petition for leave to appeal from "interlocutory orders affecting *** the

relocation (formerly known as removal) of unemancipated minors, if the appeal of such orders is not otherwise specifically provided for elsewhere in these rules." Ill. S. Ct. R. 306(a)(5) (eff. Oct. 1, 2020). She maintains that jurisdiction derives from the August 13 order which she claims affects the relocation of Z.T., an unemancipated minor.

¶ 30    The issue at the hearing involved the choice between a school in Chicago and a school in Dallas until the relocation issue could be decided. Neither the hearing nor the order addresses Z.T.'s relocation. Evidence regarded the quality of each school, transportation needs, classes and extracurricular activities, and costs. In her brief, Escobedo acknowledges the trial court made no findings of fact regarding Section 609.2 factors nor even mentions them.

¶ 31    Despite the trial court having yet to decide the matter of relocation, Escobedo asks us to find that the trial court's decision to be on relocation and against the manifest weight of the evidence. An issue not considered by the trial court cannot be raised for the first time on appeal. *Allstate Property & Casualty Insurance Co. v. Trujillo*, 2014 IL App (1st) 123419, ¶ 17.

¶ 32    Moreover, Escobedo briefs do not argue the merits of the decision to enroll Z.T. at the Lab School. So she forfeits the issue. Rule 341(h)(7) provides, "Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises*, 2013 IL 115106, ¶ 56 ("A point not argued or supported by citation to relevant authority fails to satisfy the requirements of Supreme Court Rule 341(h)(7) *** and results in forfeiture" of the argument)).

¶ 33    Appeal dismissed.